608 A.2d 1037

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Nikolai ZDRALE, Appellant.**

Supreme Court of Pennsylvania.

Argued March 13, 1992.

Decided May 21, 1992.

314

Robert Paul Vincler, Dennis M. Blackwell, Charles A. Knoll, Jr., Pittsburgh, for appellant.

Mary Benefield Seiverling, Deputy Atty. Gen., Harrisburgh, Lawrence N. Claus, Paul E. Von Geis, Sr. Deputy Attys. Gen., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1988, in a trial by jury in the Court of Common Pleas of Westmoreland County, the appellant, Nikolai Zdrale, was convicted of criminal solicitation and conspiracy to commit murder. A sentence of five to ten years imprisonment was imposed. An appeal was taken to the Superior Court, whereupon the judgment of sentence was affirmed. 397 Pa.Super. 167, 579 A.2d 1309. The present appeal, by allowance, ensued. We reverse.

Appellant was charged with having conspired with several people to commit a murder. At issue in this appeal is the admissibility of certain out-of-court declarations made by

one of appellant's co-conspirators. The factual background of the case is as follows.

The central figure in the conspiracy was William Fiore. Fiore was a landfill operator who had experienced numerous regulatory problems with the Pennsylvania Department of Environmental Resources (DER). Due to enforcement actions of the DER, Fiore's landfill operations were shut down and were incurring losses of approximately $300,000 per month.

In 1984, Fiore told a DER employee that he had paid someone to murder two DER officials. Appellant, who was likewise a landfill operator, allegedly became involved in this murder plot in 1985. Another individual, James M. Thomas, also became involved at that time. Thomas was one of appellant's employees.

In August of 1985, Thomas drove appellant and Leroy B. Smith to a building in Pittsburgh where DER offices were located. Thomas, appellant, and Smith stopped in front of the building. A man exited from the building and appellant pointed him out to Smith. Smith had been hired by Fiore to murder a DER official. Thomas, appellant, and Smith departed from the scene.

In September of 1985, Smith asked Thomas to help him transport a truck to Pittsburgh. Smith drove the truck to the vicinity of the DER offices in Pittsburgh. Thomas followed, driving appellant's car. Upon arriving there, Thomas was instructed to enter the truck and drive it around a certain route. Smith rode in the passenger seat of the truck and held a shotgun. After a while, Smith told Thomas to park the truck in an alley. Smith wiped the inside of the truck with alcohol. Smith and Thomas then departed in appellant's car and drove to Greensburg, Pennsylvania.

During the drive to Greensburg, Smith told Thomas that there was a contract on the life of a DER official and that he had planned to execute the contract. Smith explained that he was to be paid five thousand dollars for killing the

official. Smith also stated that appellant was to be involved in making the payment.

At trial, Thomas testified regarding the foregoing conversation with Smith, thus implicating appellant. Appellant contends that the trial court erred in allowing the admission of such testimony. The testimony was, in relevant part, as follows:

Q. And, did Mr. Smith talk about that gun?

A. Yes.

Q. What did he say to you?

A. He says that if the shotgun wouldn't do it that he was going to put on a jogging outfit and jog right past the guy and shoot him in the head.

Q. Who was the guy he was talking about?

A. State official.

Q. Is that what he told you?

A. Yeah.

Q. When did he tell you that?

A. On the way back to Greensburg.

Q. Did Mr. Smith tell you anything else on the way back to Greensburg?

A. Yes, he told me about who paid him. He told me that Bill Fiore paid him $5,000.00 and *he gave it to Nick Zdrale to give to Brad and Brad felt that there was more money involved that Nick Zdrale took some of it.*

Q. Did he tell you what this money was being paid for?

A. To kill this attorney.

Q. He tell you why Mr. Fiore wanted this person killed?

A. Yeah, he told me that this attorney testified against Bill Fiore.

Q. What was the amount if you recall that he said he was paid?

A. $5,000.00.

(Emphasis added).

Thomas' testimony provided an important link to appellant's involvement in the conspiracy. Thomas, rather than Smith, testified at trial because Smith could not be

called as a witness.  Smith had, several years before the events which gave rise to the present case, been convicted of multiple counts of perjury in the Court of Common Pleas of Westmoreland County.  Under 42 Pa.C.S. § 5912, which provides for the exclusion of testimony from convicted perjurers, Smith was incompetent to testify.  In 42 Pa.C.S. § 5912, it is provided:

> In a criminal proceeding, a person who has been convicted in a court of this Commonwealth of perjury ... shall not be a competent witness for any purpose, although his sentence may have been fully complied with, unless the judgment of conviction be judicially set aside or reversed. . . .

Appellant contends that, inasmuch as this provision excluded Smith from giving testimony, it was error to allow Smith's declarations to come into evidence through the testimony of Thomas.  We agree.

■ The trial court allowed the testimony, however, on the basis that Smith's declarations to Thomas were out-of-court statements admissible under the well-established co-conspirator exception to the hearsay rule.  The co-conspirator exception allows the introduction of statements made by a co-conspirator, if they were made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of the conspiracy. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981).

Were it not for the express language of 42 Pa.C.S. § 5912, the co-conspirator exception would indeed allow the admission of Thomas' testimony regarding Smith's declarations.  The legislature has, however, by the statutory provision in question, clearly expressed its intent that one who has been convicted of perjury *"shall not be a competent witness for any purpose"* (emphasis added) in a criminal proceeding.

Allowing Thomas to relate statements made by Smith places Smith, in effect, in the position of bearing witness against appellant.  Clearly, Thomas served as a mere con-

duit by which Smith's statements were brought into court. We do not believe that the legislature could have intended that a convicted perjurer, such as Smith, who is precluded from appearing in court as a witness, could, through an intermediary such as Thomas, have his statements used as evidence in a court of law. Such would be an absolutely incongruous result. Under the Statutory Construction Act, the legislature must be presumed not to have intended a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1).

The obvious purpose of 42 Pa.C.S. § 5912 was to prevent convicted perjurers from providing evidence for use in criminal trials, due to the basic untrustworthiness of their declarations. Whether one seeks to bring such declarations into court through a perjurer's own testimony, or through the testimony of others, the perjurer's record of prevarication remains the same and warrants the same degree of exclusion.

Moreover, to permit declarations to be introduced through a hearsay exception and at the same time prohibit them as in-court testimony from the declarant himself would be illogical. Regardless of the declarant's record of prevarication, allowing such declarations to be introduced as in-court testimony would at least subject the declarant to cross-examination and impeachment, and allow his demeanor and credibility to be assessed by the jury, these being safeguards that would enhance the reliability of the testimony obtained. See generally *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970) (comparative reliability of in-court versus out-of-court statements).

Thus, we do not believe that the legislature, in enacting 42 Pa.C.S. § 5912, intended that its prohibition on the admission of testimony from convicted perjurers could be circumvented by allowing a third party to relay a perjurer's declarations into court by means of the co-conspirator exception to the hearsay rule. Appellant was clearly preju-

diced by the testimony from Thomas regarding Smith's declarations, and, hence, a new trial is warranted.

Judgment of sentence reversed, and a new trial granted.

LARSEN, J., did not participate in the consideration or decision of this case.

CAPPY, J., did not participate in the decision of this case.

McDERMOTT, J., files a dissenting opinion.

McDERMOTT, Justice, dissenting.

It is well settled that the testimony of a co-conspirator is admissible as an exception to the hearsay rule. *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). The majority now holds that because a co-conspirator is a convicted perjurer, his statements made during the conspiracy are not admissible against his fellow conspirators.

A convicted perjurer is denied the witness stand because he previously foreswore his oath. *See* 42 Pa.C.S. Section 5912. However, it does not necessarily follow that what he does or says to another outside a court, in the cocoon of a conspiracy, cannot be received as evidence of that occasion. Moreover, we have previously permitted otherwise "incompetent" testimony from being received if same was qualified under a hearsay exception. See *Commonwealth v. Garrison*, 398 Pa. 47, 157 A.2d 75 (1959) (hearsay declarations of wife/co-conspirator not barred by spousal immunity). *Commonwealth v. Pronkoskie*, 477 Pa. 132, 138, n. 5, 383 A.2d 858, 861 n. 5 (1978) ("there is respectable authority for the proposition that an otherwise properly qualifying excited utterance is not rendered inadmissible by a ruling that the declarant is incompetent to testify).

The result of the majority's decision will encourage criminals to enlist convicted perjurers as co-conspirators so as to insulate themselves against otherwise admissible hearsay testimony.

For the foregoing reasons, I dissent.