**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**William Mike FIORE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 2001.
Filed July 20, 2001.
Reargument Denied Sept. 20, 2001.

Mark H. Rubenstein, Pittsburgh, for appellant.

John S. Robinette, Pittsburgh, for Commonwealth, appellee.

BEFORE: JOHNSON, STEVENS and POPOVICH, JJ.

POPOVICH, J.

¶ 1 This is an appeal from the June 8, 2000, order of the Court of Common Pleas, Westmoreland County denying Appellant's petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546. William Mike Fiore's sole argument on appeal is whether the PCRA Court erred in denying a new trial based on a finding that Appellant's after-discovered evidence was of questionable credibility and would not have affected the outcome of the trial. For the following reasons, we reverse the order and remand for a new trial.

¶ 2 The procedural and factual histories of this case are quite complex. The relevant facts and procedure are fully set forth in this Court's Memorandum Opinion filed on August 23, 1995, at 1834 PGH 1994.

Appellant, William Fiore, and Nikolai Zdrale, were acquainted with one another, as both men were landfill operators in Allegheny and Westmoreland Counties. Enactment of new federal laws in 1979–1980 resulted in a reclassification of the types of materials which could be accepted at Mr. Fiore's landfill. Consequently, he was required to obtain new permits from the Pennsylvania Department of Environmental Resources (DER) in order to continue his acceptance of these materials. In 1979, Mr. Fiore met with a DER employee, Charles Duritsa, and offered to pay him $5,000 if he would expedite the issuance of Mr. Fiore's phase I permit. Mr. Duritsa refused and notified the pertinent authorities of this incident. No action was taken against Mr. Fiore at this time and Mr. Fiore subsequently received his permit.

Mr. Fiore thereafter made application for a phase II permit at the landfill site.

However, the DER determined that there were problems with respect to the permissible phase I operations. As a result, the DER suspended Mr. Fiore's phase I permit in 1983, thus causing Mr. Fiore to incur financial losses of approximately $300,000.00 per month. Mr. Fiore subsequently entered into a consent order with the DER pursuant to which he agreed to rectify the noted deficiencies. Mr. Fiore did not correct the problems, however.

Throughout this time period, Mr. Fiore had paid Vito Luci, a subordinate DER employee, money in exchange for his consultation with respect to Mr. Fiore's permit applications.[4] Due to his frustration at the DER's failure to issue a phase II permit, Mr. Fiore apprised Mr. Luci of his intent to initiate a lawsuit against the DER. Mr. Fiore further indicated that he would name Mr. Luci as one of the defendants therein. In an attempt to preclude his superiors from discovering his relationship with Mr. Fiore, Mr. Luci contacted Mr. Fiore in an attempt to mollify him. This meeting occurred in May, 1984. During this conversation, Mr. Fiore told Mr. Luci to tell Mr. Duritsa and a DER attorney, Howard Wein, that he would have them killed if he did not receive his permits by May 18th.

After his meeting with Mr. Luci, Mr. Fiore filed a lawsuit against the DER and Mr. Luci. The DER officials met to discuss the litigation and at this time Mr. Luci divulged Mr. Fiore's death threat. Mr. Luci ultimately disclosed his relationship with Mr. Fiore as well. Although Mr. Fiore was informed that the DER was aware of his threat, no other action was taken against Mr. Fiore.

In 1985, Mr. Zdrale had hired James Thomas to perform handyman-type

work at his home. Mr. Thomas was acquainted with Leroy Bradley Smith and at some point introduced Mr. Smith to Mr. Zdrale. Both Mr. Thomas and Mr. Smith are convicts. Over the summer months of 1985, Mr. Zdrale indicated to Mr. Smith that his friend, Bill, wanted an individual, later identified as Charles Duritsa, to be "taken care of," *i.e.*, killed. Mr. Thomas, Mr. Zdrale and Mr. Smith subsequently went to a restaurant in McKeesport for the purpose of permitting Mr. Fiore to see the individual whom Mr. Zdrale had selected to perform the job. After the men were in the restaurant, Mr. Fiore entered and was identified to Mr. Smith by Mr. Thomas. However, Mr. Fiore never spoke to Mr. Smith; rather, Mr. Zdrale and Mr. Fiore ate separately.

Following this meeting, Mr. Zdrale, Mr. Smith and Mr. Thomas drove to the East Liberty section of Pittsburgh where they waited for Mr. Duritsa to leave the DER's offices. Mr. Zdrale identified Mr. Duritsa to Mr. Smith as the man whom Mr. Smith was to kill. Mr. Smith received $5,000.00 from Mr. Zdrale as a down payment on the contract.[5] Mr. Smith and Mr. Thomas subsequently drove to Bedford County where Mr. Smith stole an acquaintance's black truck. The men then drove the truck to Greensburg. After purchasing gloves and alcohol, the men proceeded to East Liberty the next day in the stolen truck. Armed with a shotgun, Mr. Thomas and Mr. Smith drove around East Liberty in search of Mr. Duritsa. However, the men could not find him and decided to abandon the stolen truck in an alley. The men wiped the interior and exterior of the truck with the alcohol and returned to Greensburg in Mr. Zdrale's vehicle. No further attempts were made to kill Mr. Duritsa.

The relationship between Mr. Thomas, Mr. Zdrale and Mr. Smith thereafter soured such that Mr. Thomas notified the law enforcement authorities of the above events. As a result, a grand jury was convened to investigate these matters. In April, 1987, the grand jury recommended that Mr. Fiore and Mr. Zdrale be prosecuted. Mr. Fiore and Mr. Zdrale were convicted of the above offenses [of criminal solicitation and criminal conspiracy to commit murder] following a joint trial in January of 1988.[6] Mr. Fiore filed post-trial motions which were denied. The trial court subsequently imposed a sentence of five (5) to ten (10) years imprisonment with regard to Mr. Fiore's conspiracy conviction. This sentence was initially set to run concurrently with the sentence Mr. Fiore received for his Allegheny County convictions, as the trial court inadvertently failed to direct otherwise at the time of sentencing.[7] However, the Commonwealth filed a motion to modify sentence, such that the sentence would be directed to run consecutively to Mr. Fiore's other term of incarceration. The trial court granted the motion and re-sentenced Mr. Fiore, who was not present at the re-sentencing.[8]

Mr. Fiore appealed to this court. We vacated the sentence and remanded for re-sentencing because Mr. Fiore had not been present when his sentence was changed; in all other respects his conviction was affirmed. *Commonwealth v. Fiore (I)*, 407 Pa.Super. 644, 584 A.2d 1046 (1990) (unpublished memorandum), Nos. 964 and 1228 Pittsburgh 1989. Mr. Fiore then filed a petition for allowance of appeal with the Supreme Court.

While his petition was pending in the Supreme Court, the trial court proceeded to re-sentence Mr. Fiore in 1991 in accordance with this court's directives. Mr. Fiore again appealed to this court,

which vacated the sentence; in reaching this result, we concluded that the trial court had no jurisdiction to act on this matter since Mr. Fiore's petition for allowance of appeal was before the Supreme Court. *Commonwealth v. Fiore (II)*, 418 Pa.Super. 630, 606 A.2d 1227 (1991) (unpublished memorandum), No. 00398 Pittsburgh 1991. The Supreme Court ultimately reversed this court's decision in *Fiore I* based on the reasoning set forth in *Commonwealth v. Zdrale*, 530 Pa. 313, 608 A.2d 1037 (1992). *Commonwealth v. Fiore*, 531 Pa. 460, 613 A.2d 1208 (1992). Consequently, Mr. Fiore was awarded a new trial. The Supreme Court remanded the record to the lower court on October 26, 1992.

The Commonwealth had 120 days from the date of remand, or until February 23, 1993, in which to retry appellant. However, trial did not take place by this date due to the fact that defense counsel filed a motion for habeas corpus relief and a motion to quash the information in December of 1992. Extensive hearings on these motions were held in February and March of 1993. The motions were later denied on June 15, 1993.[9] Mr. Fiore was again convicted following a jury trial held in July of 1993.[10] Timely post-trial motions and supplemental post-trial motions were filed and ultimately denied.[11] After his motions were denied, appellant was sentenced on October 4, 1994 to a period of five (5) to ten (10) years imprisonment; this sentence was directed to run consecutively to the sentences imposed with respect to appellant's other convictions. A post-sentencing motion was filed and likewise denied.

---

4 As a result of this conduct, Mr. Luci resigned from the DER and was subsequently convicted of bribery and other offenses.

5 Although Mr. Smith initially thought that this payment was in connection with another matter in which he and Mr. Zdrale were involved, he later discovered that the payment was for the "hit" on Mr. Duritsa and that the money was initially paid by appellant.

6 Mr. Zdrale appealed to this court which affirmed in an unpublished memorandum. *Commonwealth v. Zdrale*, 397 Pa.Super. 167, 579 A.2d 1309 (1990). However, the Supreme Court vacated his conviction and granted him a new trial. *Commonwealth v. Zdrale*, 530 Pa. 313, 608 A.2d 1037 (1992). Mr. Zdrale was re-tried and was ultimately acquitted in January of 1994.

7 During the pendency of the conspiracy proceedings, Mr. Fiore was convicted of bribery, perjury and violations of the Solid Waste Act in Allegheny County. Mr. Fiore later filed a petition for post-conviction relief with the Allegheny County Court of Common Pleas. The lower court denied this petition. Mr. Fiore's appeal therefrom is currently pending in this court. *Commonwealth v. Fiore*, No. 01892 Pittsburgh 1994.

8 Mr. Fiore filed a motion to quash the Commonwealth's motion as well as his own motion for modification of sentence. Both motions were denied.

9 While these motions were pending, the Legislature amended the statute *codified at* 42 Pa.C.S.A. § 5912. Under the prior version of the statute, individuals who had been convicted of perjury were incompetent witnesses for any person. *See* 42 Pa.C.S.A. § 5912 (prior version). Mr. Fiore and Mr. Zdrale were initially granted a new trial on this basis, since the Commonwealth had introduced the testimony of Mr. Smith, a convicted perjurer, at their first trial. The amendments to section 5912 removed the bar of incompetency so that convicted perjurers were no longer disqualified from testifying, although the existence of their conviction could be employed to impeach their credibility. *See* 42 Pa.C.S.A. § 5912 (amended version). The amendment was made applicable to all criminal matters which were pending on the effective date of the statute. Because these criminal proceedings were pending against Mr. Fiore at the time the amendments went into effect, the amended version applied. Consequently, Mr. Smith was permitted to testify against Mr. Fiore upon his retrial.

10 Mr. Fiore was represented during the pre-trial and trial proceedings by Thomas Ceraso, Esq. Although Mr. Ceraso filed post-

trial motions on Mr. Fiore's behalf, he was thereafter discharged by appellant.

11 During the post-verdict motion proceedings, Mr. Fiore represented himself *pro se*, however, he retained John Cupp, Esq. to act in an advisory capacity only. Mr. Fiore subsequently discharged Mr. Cupp and retained Harold Gondelman, Esq. to represent him. Mr. Gondelman filed a post-sentencing motion on appellant's behalf. Mr. Gondelman represented appellant at sentencing and has continued to represent him in this appeal.

*Commonwealth v. Fiore,* 447 Pa.Super. 625, 668 A.2d 1189 (Pa.Super.1995) (unpublished memorandum). Our Supreme Court denied allocatur on March 19, 1996.

¶ 3 On March 17, 1997, Appellant filed a PCRA petition.[1] The lower court denied his petition without conducting an evidentiary hearing. Appellant appealed the denial to this Court. We reversed the order and remanded the case to the PCRA court to conduct an evidentiary hearing. *Commonwealth v. Fiore,* 718 A.2d 856 (Pa.Super.1998) (unpublished memorandum).

¶ 4 The PCRA court conducted a video deposition of Mr. Zdrale on October 16, 1998. The PCRA hearing was concluded on March 21, 2000. On June 8, 2000, the PCRA court issued its order and opinion denying Appellant's request for post-conviction relief. This timely appeal followed.

¶ 5 On appeal, Appellant presents the sole issue of whether the PCRA court erred in denying his request for a new trial in finding the after-discovered evidence is of questionable credibility, involves testimony inconsistent with abundant trial evidence and is not likely to have changed the outcome of the trial.

¶ 6 Our review of denial of PCRA relief is limited to determining whether the record supports the findings of the PCRA court and whether these findings are free of legal error. *See Commonwealth v. Yager,* 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) (*en banc*). We will view the PCRA court's legal conclusions keeping this standard in mind.[2]

¶ 7 To be eligible for collateral relief, Appellant must satisfy the dictates of the PCRA, which provides in relevant part as follows. Section 9543(A) requires that the petitioner must plead and prove by a preponderance of the evidence:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

* * *

(2) That the conviction or sentence resulted from one or more of the following:

* * *

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the

---

1. Appellant's petition for collateral relief was filed nearly two years after the 1995 Amendments to the PCRA went into effect. Therefore, we must apply the PCRA as it existed at the time he filed his petition for collateral relief.

2. We note that Appellant argues that we should not give the PCRA court's findings undue deference because the PCRA court was not the same court that conducted the trial and Mr. Zdrale's deposition is available to this Court for plenary review. However, in a PCRA proceeding, we, as an appellate court, do not reweigh the evidence. The PCRA court had an opportunity to observe Mr. Zdrale during his deposition and made its findings regarding Appellant's petition. We will examine the PCRA court's findings to see if the record supports them and if any legal error was made.

outcome of the trial if it had been introduced.

\* \* \*

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa.C.S.A. § 9543(A).

¶ 8 Appellant's issue on appeal involves § 9543(a)(2)(vi). But before addressing that issue, we will briefly examine the other requirements for collateral relief.

¶ 9 Our first inquiry is whether allegation of error has been previously litigated. Relevant to Appellant's petition, § 9544(a)(2) provides that an issue is previously litigated where the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. *See Commonwealth v. Szuchon,* 548 Pa. 37, 693 A.2d 959 (1997). Appellant's request for a new trial for after-discovered evidence had not been raised during his previous appeals to this Court or our Supreme Court.

¶ 10 If an issue has not been previously litigated, inquiry is then made as to whether the issue has been waived. An issue is deemed waived if the petitioner failed to raise it and "it could have been raised before the trial, at the trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa. C.S.A. § 9544(b). Appellant was unable to raise his claim of after-discovered evidence during his appeals because the evidence was not discovered until after Appellant's appeals had been concluded.

¶ 11 Having concluded that Appellant's issue on appeal has not been previously litigated or waived and considering that he is currently incarcerated for the convictions for criminal conspiracy to commit murder and criminal solicitation, we will now conduct an inquiry into his issue on appeal.

¶ 12 As noted above, § 9543(a)(2)(vi) provides for post-conviction relief where a petitioner could prove a claim of newly discovered exculpatory evidence. In order to succeed on such a claim, the petitioner must establish by a preponderance of the evidence that:

(1) the evidence has been discovered after the trial and it could not have been obtained at or prior to trial through reasonable diligence;

(2) such evidence is not cumulative;

(3) it is not being used solely to impeach credibility; and

(4) such evidence would likely compel a different verdict.

*Commonwealth v. Abu–Jamal,* 553 Pa. 485, 517, 720 A.2d 79, 94 (1998) (citations omitted).

¶ 13 In his petition for collateral relief, Appellant alleges that the testimony of Mr. Zdrale, who was unavailable to testify at Appellant's second trial because he was awaiting his own separate trial on the same charges, would have established that Appellant was innocent of the charges. Mr. Zdrale died on July 29, 1999. His testimony was preserved, in anticipation of his death, for the PCRA hearing and any further proceedings via video deposition on October 16, 1998.

¶ 14 We first note that the PCRA court correctly ruled that Mr. Zdrale was unavailable to testify at Appellant's second trial. A witness's invocation of his Fifth Amendment rights renders him unavailable. *See Commonwealth v. Franklin,* 397 Pa.Super. 265, 580 A.2d 25, 29 (1990). Prior to trial, Mr. Zdrale's attor-

ney advised Appellant's attorney that Mr. Zdrale would invoke his Fifth Amendment right to remain silent if he was called to testify at Appellant's trial. Therefore, Mr. Zdrale was unavailable to testify at Appellant's second trial. Mr. Zdrale only became available after his own second trial in which he was acquitted of the same charges that Appellant was convicted of. Accordingly, Mr. Zdrale's ability to testify was after-discovered evidence that could not have been obtained prior to trial because of his assertion of his Fifth Amendment rights. Therefore, Appellant has met the first prong of § 9543(a)(2)(vi).

¶ 15 We also note that Mr. Zdrale's testimony was neither cumulative of testimony presented at Appellant's trial nor would be used to impeach credibility. Appellant did not testify on his own behalf at any of the proceedings and had steadfastly maintained his innocence. Mr. Zdrale testified as to what transpired between him and Appellant and that he and Appellant, while not liking Mr. Duritsa, were innocent of the charges of conspiring to murder him. Since this evidence was not available from any other source, we find Appellant has satisfied the second and third prongs in that the unavailable evidence was not merely cumulative of evidence presented by Messrs. Jones and Smith and would not be used solely to impeach their credibility.

¶ 16 The final prong is that "such evidence would likely compel a different verdict." Abu–Jamal, at 517, 720 A.2d at 94; 42 Pa.C.S.A. § 9543(a)(2)(vi). The PCRA court concluded that the after-discovered evidence was of questionable credibility, involves testimony inconsistent with abundant trial evidence and was not likely to have changed the outcome of the trial. See Commonwealth v. Fiore, 731 Criminal 1987 (Westmoreland County, Pezze, J., 6/8/2000). For the following reasons, we disagree with the PCRA court's legal conclusions.

¶ 17 Where the record supports the credibility determination of the post-conviction court, the reviewing court is to defer to that determination. Commonwealth v. Whitney, 550 Pa. 618, 630, 708 A.2d 471, 476 (1998). The PCRA court determined that Mr. Zdrale's testimony was of "questionable credibility." We note that the PCRA court did not find that Mr. Zdrale was incredible, but instead noted Mr. Zdrale's questionable credibility in determining that his testimony would not likely have compelled a different verdict.

¶ 18 Mr. Zdrale was deposed on October 16, 1998, some thirteen years after the time period in which the conspiracy allegedly transpired. His deposition also occurred over two years after an accident in which he received an injury to his brain. This injury impaired Mr. Zdrale's memory. He indicated that sometimes he would have trouble remembering things but other times he had no trouble. On the date of the deposition, Mr. Zdrale indicated that he was not having any memory difficulties and was having "a good [memory] day." See N.T., Zdrale Dep., 10/16/98, at 7. He then proceeded to answer the questions presented. Some of the answers Mr. Zdrale gave were internally inconsistent. Early in the deposition, he stated that Mr. Smith did not work for him. See id., at 11. Then, he stated that he paid Mr. Smith to drive him, see id., at 51, and to do errands for him see id., at 58. Mr. Zdrale also stated that Mr. Thomas did not work for him, see id., at 34, and then, he stated that he fired Mr. Thomas because he was a bad worker, see id., at 12. However, we note that these inconsistencies were relatively minor in that Mr. Smith and Mr. Thomas did not work for Mr. Zdrale's businesses but did errands for him personally, and in that the inconsistencies did not substan-

tively affect the charges against Appellant. Specifically, Appellant was charged with requesting Mr. Zdrale to solicit an individual, namely Mr. Smith, to commit the murder of Mr. Duritsa for pay and with conspiring with Messrs. Zdrale, Smith and Thomas to commit the murder of Mr. Duritsa. Mr. Zdrale's employment of Mr. Smith and Thomas was not material to the Appellant's charges of solicitation and conspiracy.

¶ 19 The PCRA court found that Mr. Zdrale's testimony was inconsistent with trial testimony and documentary evidence.[3] As we previously discussed, many of these inconsistencies had to do with Mr. Zdrale's employment of Mr. Smith and Mr. Thomas. For example, Mr. Zdrale stated that Mr. Thomas did not work for him. However, at trial, Mr. Thomas stated that he worked for Mr. Zdrale's business and that Mr. Zdrale paid him with a check. *See,* N.T., Fiore Trial II, 7/15/93–7/23/93, at 561. As we previously noted, these inconsistencies do not go to the heart of the charges against Appellant. Additionally, Mr. Zdrale's testimony that there was no conspiracy was inconsistent with Mr. Thomas and Mr. Smith's testimony that a conspiracy existed. However, as with all charges of a conspiracy and subsequent denials thereof, there will be inconsistent testimony at trial regarding the conspiracy.

¶ 20 This leads us to the final conclusion of the PCRA court, that Mr. Zdrale's testimony was not likely to have changed the outcome of the trial.[4] The PCRA court determined his testimony was not so persuasive as to compel a different result. In evaluating Mr. Zdrale's testimony, the PCRA court used the same factors it would have asked the jury to consider. The PCRA recognized that Mr. Zdrale had a friendship with Appellant and animosity toward other persons in the case, he had numerous inconsistencies and inaccuracies in his testimony and he had suffered a brain injury that impaired his memory. Even considering this to be true, Mr. Zdrale's testimony that there was no conspiracy, if believed by the jury, would have changed the outcome of this case.

¶ 21 The Commonwealth's case was essentially that Appellant asked Mr. Zdrale to find someone to murder Mr. Duritsa. The Commonwealth attempted to prove Appellant's involvement through statements made between Mr. Zdrale and Mr. Thomas and Mr. Smith, the men hired to conduct the murder. Mr. Zdrale's testimony would be essential to the defense to contradict the testimony of Mr. Smith, a convicted perjurer with a criminal background, and Mr. Thomas, a person with an extensive criminal history. Mr. Thomas admitted to lying to the police about the events in question and gave conflicting versions under oath. *See* N.T., Fiore Trial II, at 660–674. Mr. Thomas also received a sentence of six to twenty-three months for his involvement in these charges in return for his cooperation with the Commonwealth. *See id.,* at 648. He also received immunity from prosecution for any future charges in return for testifying before the grand jury and at Fiore's trial. *See id.,* at 616. Additionally, the testimony of both Mr. Smith and Mr. Thomas was inconsistent with previous statements they had given under oath.

---

3. The PCRA court did not state how Mr. Zdrale's testimony was inconsistent with the trial testimony and documentary evidence.

4. The 1995 amendments to the PCRA changed the language in § 9543(a)(2)(vi) "would have **affected** the outcome of the trial" to "would have **changed** the outcome of the trial."

¶ 22 Mr. Zdrale's testimony contradicts the Commonwealth's case-in-chief. At trial, the Commonwealth contended that Mr. Zdrale was the middleman in the murder-for-hire conspiracy. He was the link between Mr. Fiore, the person who wanted Mr. Duritsa killed, and Mr. Smith and Mr. Thomas, the men hired to kill Mr. Duritsa. Mr. Zdrale professed that there was no conspiracy. We believe that a jury should be presented with the testimony of Mr. Zdrale to permit it to determine whether his version of the events is more credible than that of Mr. Smith and Mr. Thomas.[5]

¶ 23 Accordingly, we find Appellant proved by a preponderance of the evidence that Mr. Zdrale was unavailable for purposes of Appellant's trial and that his testimony if believed by a jury would likely have changed the outcome of the trial.

¶ 24 Order reversed. Case remanded for a new trial. Jurisdiction relinquished.

¶ 25 STEVENS, J. files a Dissenting Opinion.

STEVENS, J., Dissenting.

¶ 1 I respectfully dissent from the Majority's decision to reverse Appellant's judgment of sentence and grant him a new trial based on after-discovered evidence.

¶ 2 As indicated by the Majority, "[w]here the credibility determination of the post-conviction court is supported by the record, the reviewing court is to defer to that determination." *Commonwealth v. Whitney*, 550 Pa. 618, 630, 708 A.2d 471,

476 (1998). In the present case, Nikolai Zdrale acknowledged in his deposition testimony, which was self-serving, *See, e.g.*, N.T. Deposition dated 10/16/98 at 9–10, and wrought with inconsistencies, his failing health and impaired memory and recollection of events. *See, e.g., Id.* at 24–27. Therefore, there exists support for the PCRA court's finding that this after-discovered evidence was of questionable credibility, contradicted abundant trial testimony and, thus, was not likely to have changed the outcome of the trial.[6] Therefore, I would affirm on the basis of the PCRA court's opinion.

---

**5.** It is interesting to note that Mr. Zdrale was acquitted of the same solicitation and conspiracy charges when tried using essentially the same evidence. However, we recognize that consistency in verdicts is not necessary and that a co-conspirator's acquittal at a subsequent trial does not require reversal of the other co-conspirator's previous conviction.

*See Commonwealth v. Campbell*, 539 Pa. 212, 651 A.2d 1096 (1994).

**6.** In addition, it is noted that the Majority cites no caselaw to support its determination that Mr. Zdrale's ability to testify was after-discovered evidence that could not have been obtained prior to trial because of his assertion of his Fifth Amendment rights.