J-E02004-22

2023 PA Super 80

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEREK MURCHISON | : | |
| | : | |
| Appellant | : | No. 3585 EDA 2019 |

Appeal from the PCRA Order Entered November 27, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0913011-2002

BEFORE: PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

DISSENTING OPINION BY OLSON, J.:         **FILED MAY 10, 2023**

Respectfully, I must dissent. I am unable to agree with the Majority that the PCRA[1] court correctly concluded that the new DNA[2] evidence proffered by Appellant, Derek Murchison (Appellant), was merely cumulative and unlikely to compel a different result. I also believe that the PCRA court relied upon inapplicable case law in determining that Appellant was not entitled to relief. Under such circumstances, our well settled standard of review compels reversal of a PCRA court order. *See **Commonwealth v. Laboy**, 230 A.3d 1134, 1137 (Pa. Super. 2020) (order denying collateral relief is reviewed to

---

[1] Like the Majority, I use the acronym "PCRA" to refer to the Post-Conviction Relief Act found at 42 Pa.C.S.A. §§ 9541-9546.

[2] The term "DNA" refers to deoxyribonucleic acid, a molecule that carries and encodes the human genome. ***See*** Merriam-Webster's Collegiate Dictionary, 11th Ed., 2003.

assess whether PCRA court's determination is supported by the evidence of record and is free of legal error).

Recently, our Supreme Court confirmed that "'after-discovered evidence' is a substantive basis for relief under the PCRA, applicable where the petitioner pleads and proves by a preponderance of the evidence that his conviction resulted from the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." ***Commonwealth v. Small***, 238 A.3d 1267, 1273 n.1 (Pa. 2020) (citations and internal quotation marks omitted), *citing* 42 Pa.C.S.A. § 9543(a)(2)(vi). "[T]o obtain relief based upon exculpatory, after-discovered evidence, the petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." ***Small***, 238 A.3d at 1273 n.1, *quoting* ***Commonwealth v. D'Amato***, 856 A.2d 806, 823 (Pa. 2004). In determining whether after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial were granted, a court considers various factors, including the integrity of the after-discovered evidence and the overall strength of the evidence supporting the conviction. ***See Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2010).

The PCRA court concluded that Appellant's after-discovered evidence claim lacked merit since, in its view, recent DNA test results merely replicated the evidence placed before the jury at Appellant's original trial and because the new evidence was not likely to compel a different result. *See* PCRA Court Opinion, 6/25/20, at 8. I disagree. I begin my analysis by recounting the PCRA court's findings with respect to the DNA evidence introduced at Appellant's original 2004 trial and then move to the court's findings with respect to the new DNA evidence offered by Appellant.

In its Rule 1925(a) opinion, the PCRA court offered the following summary of the forensic crime scene evidence presented to the jury at Appellant's original trial.

> ➤ [Michael Cannon, Cornell Mayrant, and Appellant] were all excluded as the source of any DNA material [recovered] from under [the victim's, Linda Willis,] left and right hand fingernails.

> ➤ The DNA material found under Willis' right [] hand fingernails was consistent with a mixture of Willis' [DNA] and [that from] at least one unknown male contributor.

> ➤ [The] DNA material found under Willis' left [] hand fingernails was consistent with a mixture of [Willis' DNA] and [that from] at least one other unknown male contributor who was not the same male [whose genetic material was recovered from Willis'] right hand.

> ➤ The blood samples from a toy fire engine and the wooden slat (two samples were taken from each item in different areas) showed that Willis was the source of the DNA material.

> ➤ A blanket from the sofa, Willis' sweater, and a towel found at the scene were tested for DNA. [Appellant], Mayrant, and Cannon were all excluded as the sources of DNA ([recovered from] blood and [semen] deposits) detected on the sweater and blanket.

There were three unknown [males whose genetic material was recovered from] the towel.

➢ Willis was included as a contributor to the blood stains on Cannon's boxer shorts, socks, and pants.

➢ No sperm was [recovered from] Willis' vagina or rectum.

PCRA Court Opinion, 6/25/20, at 4-5.

After recounting the forensic evidence introduced at Appellant's 2004 trial, the PCRA court then presented its assessment of the new DNA test results. According to the PCRA court, the new DNA tests showed:

➢ [Appellant] is excluded as a source of DNA [material] on the wooden [board used to bludgeon Willis].

➢ The DNA on Cannon's sock is a mixture from at least two contributors and Willis is the contributor of the major component. [Appellant] is excluded as a contributor.

➢ [Appellant] is excluded as a contributor of the sperm found on the towel and blanket. The cuttings from the towel reveal[] two unknown male DNA profiles. The cuttings from the blanket reveal four more unknown male [DNA] profiles.

*Id*. at 6.

Starting with the PCRA court's assessment of the DNA evidence recovered from Cannon's boxer shorts, socks, and jeans, I note initially that the PCRA court observed that Willis' **inclusion as a contributor** to the blood stains found on Cannon's boxer shorts, socks, and jeans was presented to the jury at Appellant's 2004 trial. *See id*. at 4-5. Subsequently, the court noted that new DNA test results included within Appellant's amended PCRA petition filed on July 5, 2016 showed that "[t]he DNA on Cannon's sock is a mixture

from at least two contributors and Willis is the contributor of the major component. [Appellant] is excluded as a contributor." *Id.* at 6.

These observations are only partly accurate. The PCRA court correctly found that DNA analysis performed before Appellant's 2004 trial confirmed the victim as a contributor to a blood stain found on the heel of Cannon's sock. Moreover, the PCRA court correctly found that new tests performed in 2015 showed the presence of DNA from a second, unknown contributor (not Appellant) in the blood stain found on the heel of Cannon's sock. *See* DNA Lab Report, 6/15/15, at 1 (two contributors to blood stain; *see also* DNA Lab Report, 7/6/15, at ¶ 2 (excluding Appellant as contributor). Nevertheless, the PCRA court's findings with respect to Cannon's jeans and his boxer shorts are not accurate. DNA testing procedures available before Appellant's 2004 trial could not definitively identify contributors to the blood stains found on Cannon's jeans or his boxer shorts. At that time, Willis **could not be excluded** as a source of the blood found on Cannon's underwear. Willis was not definitively identified as a contributor to the blood stain found on Cannon's boxer shorts until more recent DNA testing was conducted in 2015. No evidence in the record identifies the source of any blood stains found on Cannon's jeans. Thus, contrary to the PCRA court's findings, the jury at Appellant's 2004 trial was not confronted with evidence showing that the victim was included as a contributor to the blood stains found on Cannon's boxer shorts and jeans.

Moreover, the PCRA court's factual findings with respect to the wooden slat used to bludgeon the victim do not account for the entirety of the uncontested new evidence. The PCRA court correctly noted that, prior to the 2004 trial, the victim was a confirmed source of DNA material recovered from the wooden board used in the attack. *Id.* at 5. Additionally, the court accurately observed that new forensic tests excluded Appellant as a contributing source of DNA found on the board. *Id.* at 6. However, the court never acknowledged, much less assessed, new DNA tests showing the presence of DNA from an unknown contributor on the wooden board, a fact that the jury at Appellant's first trial never heard.

My colleagues in the Majority do not refute these errors and omissions in the PCRA court's findings. Instead, they defend them. The Majority views the victim's blood on Cannon's boxer shorts as "insignificant," explaining he could have gotten her blood on his undergarments when he attempted to wake her. Majority Opinion at 24-25. Moreover, while the Majority acknowledges and agrees that "**new** DNA testing revealed the presence of trace [genetic material on the wooden slat] from an unknown contributor who could not have been Appellant," the Majority dismisses this revelatory discovery as inconsequential, in view of the other evidence. Majority Opinion at 25 (emphasis added). After reviewing the record in this case, including the errors and omissions by the PCRA court, I am unable to share the confidence of my learned colleagues.

The new evidence here is new, not cumulative.[3] And the new and undisputed evidence offered by Appellant placed the victim's blood on the boxer shorts of her housemate and occasional lover and, in addition, placed the genetic material of unknown individuals on Cannon's sock and a weapon used in a fatal assault. I would conclude that such new evidence is exculpatory.

---

[3] The Majority says it agrees with the PCRA court's conclusion that Appellant's new DNA test results were "merely cumulative," *see* Majority Opinion at 22, but its subsequent analysis substantially undermines this assessment. With respect to the wooden board, the Majority concedes that Appellant's new DNA evidence "**revealed** [] the presence of trace DNA from an unknown contributor who could not have been Appellant[.]" *Id.* at 23 (emphasis added). As for Cannon's sock, the Majority admits that the new DNA evidence "**introduce[d]** evidence of a third-party contributor" who was not the victim or Appellant. *Id.* at 24 (emphasis added). Lastly, as to Cannon's undergarments, the Majority acknowledges that the new DNA test results "**confirm[ed]** the victim's blood on Cannon's boxer shorts[.]" *Id.* (emphasis added).

The Majority cannot have it both ways: newly-obtained test results that reveal, introduce, and confirm novel facts that were not presented at a prior trial logically constitute new evidence, not cumulative proof. Moreover, as I shall explain below, the new test results here introduced arguments and claims that Appellant could not (and did not) make at his 2004 trial; hence, any finding that the new evidence is "merely cumulative" is inconsistent with the unrefuted circumstances presented in this appeal and our prior precedents. *See Padillas*, 997 A.2d at 365 (noting that evidence is more likely to be deemed cumulative or corroborative where it merely supports claims the defendant previously made and litigated at a prior trial). Lastly, since no physical evidence linked Appellant to the crime scene and his only connection to the killing came from incriminating statements he made to individuals who did not witness the relevant events, the Commonwealth's case in 2004 was largely a circumstantial one and our cases hold, in such instances, that "[n]ew evidence to support a defendant's claim of innocence is **less** likely to be deemed cumulative if the conviction is based largely on circumstantial evidence." *Id.* (emphasis added).

Given these conclusions, I am unable to agree that Appellant's after-discovered evidence does not entitle him to relief. In this case, no physical evidence linked Appellant to the crime scene; hence, Appellant's only connection to Willis' killing came through his inculpatory, out-of-court statements to individuals who did not witness the relevant events, two of whom were Appellant's former romantic partners and one of which acknowledged receiving assistance from the Commonwealth in obtaining placement into drug treatment in exchange for her testimony. Moreover, as stated, the PCRA court rendered factual determinations that were either inconsistent with the record or failed to account for uncontested facts. Finally, as I shall explain more fully below, the PCRA court misapprehended the legal standard applicable to an after-discovered evidence claim, appearing to insist that Appellant prove his actual innocence where he needed only to demonstrate, by a preponderance of the evidence, that a different verdict was likely. *See Commonwealth v. Payne*, 210 A.3d 299, 304 (Pa. Super. 2019) (*en banc*) ("[A] petitioner must only establish by a preponderance of the evidence that the exculpatory after-discovered evidence would have changed the outcome of the trial if it had been introduced.") (internal quotation marks omitted), *appeal denied*, 218 A.3d 1201 (Pa. 2019).

In my view, Appellant's after-discovered evidence, together with the facts which the PCRA court failed to apprehend properly, would likely have a significant impact on a fact-finder's perception of this case. In contrast to the

PCRA court's observations, the jury at Appellant's 2004 trial heard only that Willis was "not excluded" as a source of DNA material recovered from Cannon's underwear. In this posture, the jury could have found that the evidence was unrelated to the case and attributed little significance to it. New DNA analysis offered by Appellant definitively identified Willis as a contributor to the blood stain found on the inside waistband of Cannon's boxer shorts. Confirmation of the victim's blood on the undergarment of her part-time sexual partner, Cannon, leaves almost no room to find that the deposit is unrelated to this case. As such, the new evidence implicated a substantially more compelling alternate suspect than was present at Appellant's first trial and, in this way, supplied a factual predicate for the argument that the killing resulted from a romantic or domestic dispute.[4]

Similarly, new results from tests performed on Cannon's sock and the wooden board would likely have a significant differentiating impact on the outcome of a second trial. Prior to Appellant's 2004 trial, Willis was a known source of DNA found on Cannon's sock and the wooden board used to assault

_____

[4] Recall that Cannon testified that he twice walked by the victim's corpse as it lay on the sofa, thinking she was merely asleep. When police investigators arrived, however, they noted that the victim was naked from the waist down and that her underwear, together with a bloody wooden board, a bloody toy fire truck, and a trampled newspaper, all lay within close proximity of both the victim and the sofa. Consider, for a moment, the arguments that might now be possible and the new picture that might emerge from Cannon's testimony if an accomplished criminal defense attorney could confront him with vigor about the discovery of the victim's blood on the inside of his underwear against the backdrop of this horrific crime scene.

her. New testing, however, confirmed the presence of DNA from unknown contributors in genetic material recovered from Cannon's sock and the wooden board. Although these new facts were uncontested, the PCRA court and the Majority, in large measure, fail to explore and assess their implications. The PCRA court expressed no opinion about the presence of DNA from an unknown contributor on the wooden board and equated new evidence about an unknown contributor to stains on Cannon's sock to evidence the jury heard at Appellant's 2004 trial. *See* PCRA Court Opinion, 6/25/20, at 8. But new and incontrovertible proof concerning both known and unknown parties at a violent crime scene would present a treasure trove of ammunition to a skilled trial advocate representing a defendant who could not be connected by physical evidence to a particular offense. Such uncontested evidence would open new lines of persuasive and factually compelling attacks upon the Commonwealth's witnesses, claims, and theories since the new facts raise legitimate questions about Appellant's involvement in the crime or, alternatively, the level and nature of his intent, if the jury were to conclude that Appellant participated in Willis' killing.

The PCRA court's failure to carefully consider the implications of Appellant's new evidence and the probable impact it would have in the context of a purely circumstantial case is not only troubling but also likely led the court to underestimate the novel nature and potential consequences of Appellant's new proof. New evidence which merely confirms that an individual was not

present at a crime scene may not be very compelling when assessing whether such evidence would result in a different verdict at a second trial. But that is not the picture that emerges from the new evidence proffered in this case. The new evidence here definitively placed Willis' DNA on the waistband of Cannon's undergarments, in contrast with merely an outer garment as in Appellant's first trial. This introduced the possibility of a violent confrontation resulting from a domestic disturbance. Appellant's after-discovered evidence also confirmed the presence of unknown individuals whose DNA was recovered from blood stains found on Cannon's sock and trace materials found on the wooden board used to bludgeon Willis. Appellant's new evidence thus extended the known locations of the victim's DNA and brought to light the crime-scene presence of previously unknown individuals. Because the evidence was exculpatory and probative of material facts that were unknown and unaddressed at the 2004 trial, the newly discovered proof supports an order granting a new trial. *See Commonwealth v. Small*, 189 A.2d 961, 973-974 (Pa. 2018) (evidence tending to prove material facts different from those addressed in prior trial can support after-discovered evidence claim).

My conclusions are supported by a prior *en banc* decision issued by this Court. In *Payne*, *supra*, the defendant entered a general guilty plea to murder in 1977. *Payne*, 210 A.3d at 300. Thereafter, the case proceeded to a degree of guilt hearing before three judges, who found the defendant guilty of first-degree murder. The verdict of the judges rested upon the

Commonwealth's theory that the defendant murdered the victim while committing rape. *Id.* at 302. In 2014, DNA testing excluded the defendant as a contributor to seminal fluid recovered from the victim. *Id.* at 301. The defendant petitioned for collateral relief on the strength of the 2014 DNA tests. *Id.* The PCRA court denied relief after concluding that the DNA evidence was unlikely to change the results of the degree of guilt hearing since other evidence supported Payne's first-degree murder conviction. *Id.* at 301-302.

In rejecting the PCRA court's analysis, the *en banc* panel in ***Payne*** explained a petitioner's burden in establishing that after-discovered DNA evidence would likely alter the outcome of a trial if it had been introduced. We said:

> When evaluating whether a petitioner has established by a preponderance of the evidence that the after-discovered evidence would likely produce a different verdict, a court must examine the persuasiveness of the new evidence assuming the fact-finder believes it. ***Commonwealth v. Fiore***, 780 A.2d 704, 713-714 (Pa. Super. 2001). This inquiry includes evaluations of (1) the nature of the new evidence; (2) whether, and to what extent, the new evidence is consistent or inconsistent with other trial testimony; and (3) whether, and to what extent, the new evidence is consistent or inconsistent with documentary evidence. ***Id.***
>
> Our Supreme Court has examined several case-specific factors, including: (1) the prosecution's theory at the original trial, and the difficulty of making this argument in light of the new evidence; and (2) the prosecutor's closing remarks, which may demonstrate the importance of the new evidence. ***See Commonwealth v. Bulted***, 443 Pa. 422, 279 A.2d 158, 161-62 (1971)[.]

***Payne***, 210 A.3d at 302.

Our case law does not require that a petitioner establish that after-discovered evidence proves his innocence beyond a reasonable doubt. *Id.* at 304. Instead, as I explained above, "a petitioner [need] only establish by a preponderance of the evidence that the exculpatory after-discovered evidence would have changed the outcome of the trial if it had been introduced." *Id.* "[T]he focus [of our analysis] is on whether [a petitioner] has proven by a preponderance of the evidence that the after-discovered evidence would likely have changed the Commonwealth's theory of the case[.]" *Id.* at 305. Hence, relief may be awarded even when the record contains other evidence that supports a conviction and even where it is possible that a second trial will result in re-conviction. *See id.* at 304-305.

In its closing argument to the 2004 jury, the Commonwealth placed great weight on the contention that the physical evidence recovered from the crime scene did not point to any attacker other than Appellant. In fact, the Commonwealth suggested that the jury would have to seriously question Appellant's culpability if the DNA evidence confirmed only the crime scene presence of the victim and some third person (not Appellant). *See* N.T., 6/15/04, at 99. That is precisely what Appellant's after-discovered DNA evidence has done. Thus, given the new evidence proffered by Appellant, one of the Commonwealth's central arguments in favor of guilt in 2004 is now unavailable. The Majority's affirmance of the PCRA court's ruling, premised primarily on other evidence supporting Appellant's conviction and the

- 13 -

testimony of witnesses who did not see the fatal assault on the victim, conflicts with our prior *en banc* statement in *Payne*. Because Appellant's new DNA evidence refuted the Commonwealth's central theory of guilt as it was presented to the jury in 2004, I would hold that Appellant met his burden of proving, by a preponderance of proof, that after-discovered evidence would likely have changed the verdict in this case.

Lastly, the PCRA court's uncertainty about the applicable legal standard placed a burden upon Appellant which was likely inconsistent with our jurisprudence. The record establishes that the DNA evidence introduced at Appellant's original, 2004 trial did not show the presence of his genetic material on the wooden slat or on Cannon's sock. New DNA testing, however, placed the genetic material of unknown persons on the wooden slat and Cannon's sock. These new facts are not contested. *See* Majority Opinion at 23; PCRA Court Opinion, 6/25/20, at 8 ("The only truly 'new' piece of information from the more recent DNA testing is that the DNA on Cannon's sock came from Willis **and an unknown person**. Significantly, at trial, the jury learned that the DNA from Cannon's sock came from Willis, **but did not know about the unknown person's DNA**.") (emphasis added).

Rather than weighing the potential impact of this new evidence within the context of the extant record, the PCRA court cited our prior decisions in *Commonwealth v. Brooks*, 875 A.2d 1141 (Pa. Super. 2005) and *Commonwealth v. Heilman*, 867 A.2d 542 (Pa. Super. 2005), in which we

- 14 -

said that negative DNA results, meaning cases where a person's DNA material is not found, do not establish actual innocence.[5]   *See* PCRA Court Opinion, 6/25/20, at 9; *see also Brooks*, 875 A.2d at 1147, *quoting Heilman*, 867 A.2d at 544.  Relying on our prior decisions, the PCRA court concluded that Appellant's new evidence was "meaningless" and did not establish his actual innocence, since his DNA was not found on the wooden slat or Cannon's sock. *See* PCRA Court Opinion, 6/25/20, at 9.

My position is not that *Brooks* and *Heilman* lend no support for the principles addressed in those cases.  My concern, instead, is that the proposition for which they were cited by the PCRA court has no application in this case.  The issues raised in the context of this appeal do not involve threshold requests for DNA testing under the PCRA.  Moreover, Appellant's new evidence did not simply show that his DNA was not found on the wooden slat or Cannon's sock.  Rather, his new evidence **confirmed** the presence of genetic material from unknown persons on those items.  Most importantly, while the 2004 jury heard evidence which showed that Appellant's genetic material was not recovered from any items present at the crime scene, it did

---

[5] *Brooks* and *Heilman* involved requests for DNA testing pursuant to 42 Pa.C.S.A. § 9543.1(c), which requires a *prima facie* showing that DNA testing of specific evidence, assuming exculpatory results, would establish actual innocence.  *See* 42 Pa.C.S.A. § 9543.1(c).  The decisions do not purport to establish guidelines for entitlement to relief on a claim asserting exculpatory after-discovered evidence.

not hear evidence which affirmatively placed the genetic material shed by unknown persons onto Cannon's sock and the wooden slat. Appellant's new evidence was exculpatory and, at the very least, suggested his "innocence" because it brought alternative culprits into the picture. As such, **Brooks** and **Heilman** do not, in my view, foreclose relief, as the PCRA court appears to have concluded. **See** PCRA Court Opinion, 6/25/20, at 9 ("The fact that [Appellant's] DNA was not found on these items, particularly the wooden slat, is meaningless and does not establish his actual innocence of killing Willis by strangulation. What renders it even more meaningless is that the jury was presented with this same evidence at trial – that [Appellant's] DNA was not detected at the crime scene – and the jury still chose to find [Appellant] guilty of Willis' murder."). In short, not only did the PCRA court cite inapplicable case law, it did so for the purpose of drawing a largely irrelevant conclusion.

Because Appellant came forward with exculpatory, noncumulative evidence that was unavailable to him at the time of his original trial in 2004, I would vacate the order denying his petition for collateral relief and remand for a new trial.

Judges Dubow and Kunselman join this Dissenting Opinion.