COMMONWEALTH of Pennsylvania,
Appellee

v.

Adam VANSKIVER, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 7, 2002.
Filed Feb. 26, 2003.

Mark P. Much, Media, for appellant.

William R. Toal, III, Assistant District Attorney, Media, for Com., appellee.

Before: DEL SOLE, P.J., McEWEN, P.J.E., HUDOCK, JOYCE, STEVENS, TODD, KLEIN, BENDER and GRACI, JJ.

BENDER, J.

¶ 1 In this consolidated appeal, Adam Vanskiver[1] (Appellant) appeals the July 10, 2001 order denying him relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, and the October 5, 2001 judgment of sentence in which Appellant was re-sentenced using the proper Sentencing Guidelines following his PCRA hearing, but was denied credit for time served on electronic home monitoring.

We affirm both the order and the judgment of sentence.

¶ 2 The facts as set forth by the trial court are as follows:

On the evening of August 31, 1997, the victim, Patricia Harrison, Appellant, and their child were at a barbecue party at the home of Elizabeth Harrison, the victim's mother. The victim and Appellant began to argue later that evening. The argument continued inside the home when Appellant grabbed Ms. Harrison by the arm saying that he wanted to leave. At that point, noticing the confrontation, Elizabeth Harrison [ ] told Appellant and her daughter to leave.

Taking their infant son, Ms. Harrison and Appellant left the party but continued the argument in the car. The argument soon turned into a physical altercation. Appellant began to scream at Ms. Harrison and hit her in the head while she attempted to drive the car. While at a red light, Appellant came around to the driver's side door saying that he would drive. The victim and Appellant eventually arrived at their apartment. While still in the car, the confrontation escalated and Appellant continued to hit Ms. Harrison with both an open and a closed fist. At that point, a neighbor observed the fighting, walked over to the vehicle, and insisted that Appellant stop the abuse.

Appellant merely drove away, and pulled into the nearby Scenic Road Trolley Station parking lot. During this interval, Appellant continued yelling at Ms. Harrison and ultimately grabbed her around the throat, squeezing her airway closed. Ms. Harrison struggled to get free, and was finally able to es-

---

1. Throughout the record, Appellant's name is spelled VanSkiver, Van Skiver, or Vanskiver. We employ the latter spelling herein, as we did in a prior appeal in this case. *Commonwealth v. Vanskiver*, 759 A.2d 26 (Pa.Super.2000) (unpublished memorandum).

cape from Appellant's hold. She ran from the vehicle, into the trolley station parking lot, where Appellant knocked her to the ground and began to drag her back to the car. Bystanders at the station proceeded to yell at Appellant to stop, at which time he fled the scene.

At approximately 9:40 p.m. that evening, the Springfield Township Police Department received a report of an assault in progress at the Scenic Road Trolley Station. Officer John DiTrolio responded to the scene and found the victim, Patricia Harrison, and two bystanders awaiting his arrival. Officer DiTrolio spoke to the victim, who related to him that her boyfriend, Adam Van Skiver (Appellant), had assaulted her.

Officer DiTrolio transported Ms. Harrison to the Springfield Township Police Station where she received medical attention for her injuries. She was then taken to Springfield Hospital for further examination and treatment. Ms. Harrison sustained abrasions on her left wrist, right elbow, and left foot. In addition, her face was swollen and she was bruised around the neck.

Trial Court Opinion, 1/3/02, at 5–6. The following day, Appellant was arrested and charged in Delaware County with simple assault, aggravated assault, recklessly endangering another person, harassment, stalking, and disorderly conduct. Appellant was released on $10,000 bail. At the time of his arrest in Delaware County, Appellant was on probation in Philadelphia County on unrelated charges. The Philadelphia County Probation Department lodged a detainer against Appellant. Additionally, because Appellant failed to comply with the conditions of bail in Delaware County, Delaware County authorities also lodged a detainer against Appellant.

¶ 3 On April 29, 1998, Philadelphia County authorities arrested and incarcer-ated Appellant on the probation violation detainer that had been lodged against Appellant as a result of his arrest in Delaware County. In the meantime, the Delaware County District Attorney's Office filed a petition to revoke or increase bail. On July 2, 1998, the Delaware County Court of Common Pleas held a hearing at which it considered the district attorney's petition to revoke or increase bail, and the court re-set Appellant's bail at $20,000 cash.

¶ 4 Appellant remained incarcerated in Philadelphia County until July 9, 1998, when he posted bail. As a condition of bail in Philadelphia County, Appellant was placed on electronic home monitoring. Appellant remained on electronic home monitoring from July 9, 1998, until February 16, 1999.

¶ 5 On October 22, 1998, following a bench trial on the Delaware County charges, Appellant was convicted of all charges, including aggravated assault. On February 17, 1999, the trial court sentenced Appellant to 60 to 120 months' incarceration at a state correctional institution for aggravated assault with a concurrent sentence of one to two years' imprisonment for disorderly conduct. The remaining convictions merged for sentencing purposes. The sentence was in the aggravated range of the Sentencing Guidelines. Following a hearing on June 8, 1999, the trial court denied Appellant's post-sentencing motions.

¶ 6 Appellant filed a direct appeal to this Court on June 29, 1999. We affirmed his judgment of sentence on May 16, 2000. *Commonwealth v. Vanskiver*, 759 A.2d 26 (Pa.Super.2000) (unpublished memorandum).

¶ 7 On May 25, 2001, with the assistance of new counsel, Appellant filed a timely PCRA petition. In his PCRA petition, Appellant argued that trial counsel was

ineffective for failing to pursue a line of questioning during trial regarding a prior inconsistent statement allegedly made by the victim to Appellant's father regarding the cause of her injuries. Appellant also argued that trial counsel was ineffective for failing to challenge an erroneously computed Prior Record Score (PRS) that resulted in a sentence beyond the parameters indicated in the Sentencing Guidelines. On June 10, 2001 and June 21, 2001, the trial court conducted an evidentiary hearing on Appellant's PCRA petition. On July 10, 2001, the trial court issued an order denying relief on Appellant's claim of ineffective assistance of counsel for failure to elicit evidence of the prior inconsistent statement allegedly made by the victim to Appellant's father. However, the trial court granted relief on Appellant's other claim, finding that the PRS was indeed calculated incorrectly and had caused Appellant's sentence to be increased by six months. The Commonwealth agreed that there had been an error in calculation of the PRS and agreed that Appellant should be re-sentenced. The trial court ordered re-sentencing for July 17, 2001.

¶ 8 At re-sentencing on July 17, 2001, Appellant argued that, pursuant to the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001), he should receive credit against his Delaware County sentence of incarceration for the time he spent on electronic home monitoring in Philadelphia County. To address this issue, the trial court convened an evidentiary hearing before a three-judge panel on September 20, 2001. The panel concluded that Appellant was not entitled to credit for time served on electronic home monitoring.

¶ 9 On October 5, 2001, the trial court re-sentenced Appellant to 54 to 108 months' imprisonment for aggravated assault with a concurrent term of one to two years for disorderly conduct. The sentence imposed was still within the aggravated range, but accounted for the corrected PRS. Also, although this sentence included credit for time served while incarcerated, the trial court refused to grant credit for time served on electronic home monitoring in Philadelphia County from July 19, 1998 through February 16, 1999.

¶ 10 Appellant filed notices of appeal of both the July 10, 2001 order that denied PCRA relief and the October 5, 2001 judgment of sentence that had been imposed after re-sentencing. According to our docket, the parties stipulated to consolidation of the appeals on February 19, 2002. We first address the denial of PCRA relief.

¶ 11 Appellant contends the trial court erred by denying PCRA relief on Appellant's claim of ineffective assistance of trial counsel for failure to elicit testimony from Appellant's father at trial that would have challenged the victim's credibility by revealing a prior inconsistent statement made by the victim to Appellant's father pertaining to the cause of her injuries. At the PCRA hearing, Appellant's father testified that, a couple of days after the incident, the victim went to Appellant's father's house and told him that she and Appellant were fighting in the car and she sustained her injuries when her seatbelt caught her around the neck as she tried to jump out of the car and she was dragged by the car. N.T. PCRA Hearing, 6/19/01, at 8–9. Appellant's father claimed that he conveyed this conversation to Appellant's attorneys several times prior to trial. *Id.* at 9.

¶ 12 "Our review of denial of PCRA relief is limited to determining whether the record supports the findings of the PCRA court and whether these findings are free of legal error." *Commonwealth v. Fiore*, 780 A.2d 704, 710 (Pa.Super.2001). To be

eligible for relief under the PCRA, a petitioner must plead and prove, *inter alia*, "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). For purposes of the PCRA, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

■ ¶ 13 We conclude the trial court properly denied relief on Appellant's first claim for PCRA relief. Although the trial court examined the merits of the claim, we conclude Appellant waived this claim pursuant to the waiver provisions of sections 9543(a)(3) and 9544(b) because Appellant could have, but failed to, raise the issue on direct appeal.[2,3] Appellant's claim of ineffective assistance of counsel is not cognizable under the PCRA since he failed to plead and prove, pursuant to the express language of section 9543(a)(3), that the issue raised by his claim has not been waived. *Commonwealth v. Wallace*, 555 Pa. 397, 724 A.2d 916, 920–21 (1999) (refusing to apply relaxed waiver rule to capital case and concluding Court has no power to

review claim that could have been raised on direct appeal under express terms of PCRA waiver provisions).

■ ¶ 14 A "petitioner can avoid a finding of waiver under the PCRA by making a proper claim of ineffective assistance of counsel at his first available opportunity to do so." *See Commonwealth v. Ford*, 570 Pa. 378, 809 A.2d 325, 344, n. 5 (2002) (indicating PCRA petitioner could overcome PCRA waiver rule by pleading and proving ineffectiveness of appellate counsel for failing to raise ineffectiveness of trial counsel). Appellant herein fails to assert layered ineffectiveness of counsel by raising appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness on direct appeal. Also, Appellant does not assert that the victim's alleged prior inconsistent statement made to Appellant's father was not unavailable at the time of direct appeal, *i.e.* Appellant makes no claim that the victim's statement constituted after-discovered evidence. *See, e.g., Fiore*, 780 A.2d at 711 (concluding PCRA claim not waived where "[a]ppellant was unable to raise his claim of after-discover-

---

**2.** "It is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." *Commonwealth v. Singletary*, 803 A.2d 769, 772–73 (Pa.Super.2002) (citation omitted).

**3.** We recognize our Supreme Court's recent decision in *Commonwealth v. Grant*, —— Pa. ——, 813 A.2d 726 (2002), announcing the general rule that "a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738. The new rule announced in *Grant* overrules a long line of case law, beginning with *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), "to the extent that [*Hubbard* and its progeny] require[ ] that trial counsel's ineffectiveness be raised at that time when a petitioner obtains new counsel or those claims will be deemed waived." *Id.* at 738.

*Grant*, however, does not apply to save the instant ineffective assistance of counsel claim from waiver for the following reasons. In discussing the retroactivity of the new rule announced in *Grant*, our Supreme Court indicated that the new rule applies to the parties in *Grant* and to "those cases currently pending on **direct appeal** where the issues of ineffectiveness have been properly raised and preserved." *Id.* (emphasis added). The Court further stated that "[o]ur decision today has no effect on cases currently pending on collateral review." *Id.* at n. 16. At the time *Grant* was decided, the instant case was pending on collateral review as to the ineffective assistance of counsel claim. Accordingly, *Grant* is inapplicable herein and, therefore, Appellant's claim of ineffective assistance of counsel remains waived. The waiver analysis herein comports with, and relies upon, pre-*Grant* law.

ed evidence during his appeals because the evidence was not discovered until after Appellant's appeals had been concluded"). In summary, Appellant asserts no basis that would overcome waiver of this issue under the express terms of the PCRA waiver provisions and, therefore, his claim was not cognizable under the PCRA. The trial court properly denied relief on Appellant's first claim.[4]

¶ 15 Next, Appellant argues that the trial court erred by refusing to grant him credit for time served on Philadelphia County's Electronic Home Monitoring Program. A challenge to the trial court's failure to give credit for time served prior to sentencing involves the legality of sentencing and is, therefore, appealable as of right. *Commonwealth v. Little*, 417 Pa.Super. 505, 612 A.2d 1053, 1053 n. 1 (1992).

¶ 16 The Sentencing Code, 42 Pa. C.S. §§ 9701–9799.7, provides, in pertinent part:

### § 9760. Credit for time served

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1). We must interpret the phrase "time spent in custody" as used in section 9760(1) of the Sentencing Code to determine whether Appellant is entitled to credit for time served in Philadelphia County's Electronic Home Monitoring Program against his sentence imposed in Delaware County.

¶ 17 Our Supreme Court addressed this issue, as a matter of first impression, in the plurality opinion of *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001). A plurality of the Supreme Court concluded that the defendant in *Chiappini* was entitled to credit for time served under the Lackawanna County Home Confinement/Electronic Monitoring Program because the restrictions of the program, as employed in that particular case, constituted "custody" for purposes of section 9760(1). *See id.* at 499 n. 10. Recognizing that the Sentencing Code does not provide a definition of "custody," the Court turned to the Statutory Construction Act, 1 Pa. C.S. § 1903(a), and relied on common and approved usage of the term "custody." *Id.* at 498. The Court concluded that custody includes forms of restraint other than imprisonment. *Id.* at 500–501. Although "imprisonment" is one form of "custody," custody is a much broader term. *Id.* at 500. Since the legislature chose the term "custody," rather than the term "imprisonment," when drafting section 9760, the Court rejected the Commonwealth's argument that forms of restraint other than imprisonment cannot be counted for credit under section 9760. *Id.* The Court stated.

[i]n determining whether a person has spent time in custody it is necessary to examine the extent of control exercised

4. Additionally, it is worth noting that Appellant's father testified at trial that he had no conversations with the victim after the incident, and both trial counsel denied that Appellant's father had ever told them, prior to or

during trial, about a prior inconsistent statement made to him by the victim, thereby discrediting Appellant's claim for PCRA relief on this issue. N.T. PCRA Hearing, 6/19/01, at 12, 27–29; N.T. PCRA Hearing, 6/21/01, at 9.

by those in authority. The type of technology employed in this case has made it possible for prison authorities to restrain and severely limit a person's freedom by limiting his ability to move about freely to the confines of his home. The restrictions placed upon Appellant here went well beyond the restrictions typically employed by a court in releasing a defendant on his own recognizance or upon a condition that a defendant not leave the jurisdiction of the court.

*Id.* at 501. The Court limited its discussion to the Lackawanna County Electronic Monitoring Program. The Court indicated, "[w]hether other programs fall within the meaning of the term custody is a question that will need to be examined in each individual case." *Id.* at 501 n. 12.

¶ 18 In finding that the Lackawanna County electronic home monitoring program constituted custody, the plurality noted the following factors: (1) the program is administered by Lackawanna County prison authorities; (2) a participant in the program is considered an "inmate" of the Lackawanna County prison and his residence is considered to be a jail without bars; (3) a participant must at all times wear a non-removable ankle or wrist bracelet; (4) a monitoring device is connected to the participant's telephone and corrections personnel are permitted to enter the participant's home to maintain this equipment; (5) the program restrictions are monitored by telephone calls and visits by home detention staff members; and (6) a participant must cooperate with home detention staff and permit them to enter his or her residence upon request at any time, day or night. *Id.* at 497.

¶ 19 In the instant case, a three-judge panel of the trial court denied credit for time served on the Philadelphia County electronic home monitoring for two reasons. T.C.O., 1/3/02, at 12. First, the trial court concluded that Appellant was unable to demonstrate that the Philadelphia County electronic home monitoring program constituted "custody" for purposes of credit for time served under section 9760.

¶ 20 The trial court examined the details of the Delaware County electronic home monitoring program, which it determined to be the same in all pertinent respects to the Philadelphia County electronic home monitoring program. Philip F. Pisani, Director of Pre–Trial Bail Services for the Delaware County Courts, testified at the hearing and described the rules and regulations of the Delaware County electronic home monitoring program. Based on this testimony, the trial court concluded the program did not constitute custody for purposes of section 9760. The three-judge panel determined that, although a participant in the Delaware County program had to wear an ankle bracelet that permitted monitoring of his distance from his home telephone and was, therefore, similar to the Lackawanna County program examined in *Chiappini* in that respect, the Delaware County program differed in other crucial respects that militated against a finding of custody. For example, the Delaware County program is administered by the trial court, not prison authorities as in *Chiappini.* N.T. Hearing, 9/20/01 at 61. Participants in the Delaware County program are not considered "inmates" of the Delaware County prison. *Id.* Officials [5] of the program are not permitted to enter a participant's house without consent of the participant to repair malfunctioning monitoring equipment. *Id.* at 62–63. Usually, if an ankle or wrist bracelet malfunctions, officials will ask the participant to go to

**5.** We use the term "official" here broadly to include any person involved in administering or maintaining the electronic monitoring program.

the staff office for repairs. *Id.* at 62. A participant in the Delaware County program is not subject to a warrantless search of his or her residence. *Id.* at 61–62. Rather, if an official of the Delaware County program suspects a violation by a participant, such official would have to first knock for admittance to the participant's residence. *Id.* at 63. If the official is refused admission into the residence, the official must obtain a court order or warrant prior to entering the residence. *Id.* In other words, a participant is not required to allow officials to enter his or her residence at any time. *Id.* at 64. This particular feature of the program is in stark contrast to the Lackawanna County program examined in *Chiappini*, which allowed prison authorities, who administered the program, to enter a participant's residence at any time, day or night.

¶ 21 Also, a participant in the Delaware County program is routinely permitted to engage in many of his or her regular activities outside the home. Normally, even a participant who is employed outside of the Commonwealth is permitted to go to work. *Id.* at 43–44, 66. Appellant admitted that, while on electronic home monitoring for the time for which he now seeks credit, he was permitted outside his home for a total of eight hours per week to pursue employment. *Id.* at 30. Requests to leave home for purposes other than employment are handled by the Pre–Trial Bail Services Unit of the trial court on a case by case basis. *Id.* at 70. Approval to leave home is contingent on the nature of the charges, nature of the activity, the participant's prior record, and the participant's past level of cooperation with the trial court. *Id.* With advance approval, participants have been allowed outside their home to attend a variety of personal, religious, and family activities. *Id.* at 67–70.

¶ 22 The trial court also found that the Philadelphia County electronic home monitoring program was more similar to the Delaware County electronic home monitoring program, than to the Lackawanna County program examined in *Chiappini*, in terms of the opportunities offered to participants and the manner in which it is administered. T.C.O., 1/3/02, at 17–18. Accordingly, we conclude the three-judge panel convened by the trial court properly examined the program rules and regulations to which Appellant was subject and did not abuse its discretion by concluding that such rules and regulations did not impose significant restraints on his liberty so as to constitute "custody" for purposes of credit for time served under section 9760.[6]

---

**6.** In addition to finding that the electronic home monitoring program did not constitute custody for purposes of section 9760, the trial court further concluded that both the Sentencing Code, 42 Pa.C.S. §§ 9701–9799.7, and the County Intermediate Punishment Act 42 Pa.C.S. §§ 9801–9812, precluded credit for time spent in an intermediate punishment program, such as electronic home monitoring, against a sentence of incarceration for aggravated assault. T.C.O., 1/3/02, at 14. Indeed, we recognize that the County Intermediate Punishment Act provides that sentences of intermediate punishment are available only to "eligible" offenders, and persons convicted of certain enumerated crimes, such as aggravated assault, are not considered "eligible" for intermediate punishment. *See* 42 Pa.C.S. § 9802. We further recognize that, as illustrated in *Chiappini*, our Supreme Court is divided on the issue of whether the County Intermediate Punishment Act applies to an analysis of whether an individual should get credit under section 9760. Nevertheless, we conclude that addressing this issue is neither appropriate nor necessary under the circumstances of the instant case in which we have already decided that the trial court did not err by concluding that the program Appellant was subjected to did not constitute custody. Accordingly, we make no pronouncement on the issue of the applicability of the County Intermediate Punishment Act to section 9760 at this time.

¶ 23 Finally, we take this opportunity to clarify our holding in *Commonwealth v. McCalman*, 795 A.2d 412, 418–19 (Pa.Super.2002), in which a three-judge panel of this Court relied on *Chiappini* to conclude that house arrest with electronic monitoring constituted custody for purposes of section 9760. We emphasize that not all programs of house arrest with electronic monitoring may constitute custody for purposes of section 9760. Rather, the courts must examine the rules and regulations of each program on a case-by-case basis by considering the extent of control exercised by those in authority and the restraints and limitations on the freedom of the individual seeking credit for time served. *See Chiappini*, 782 A.2d at 501.

¶ 24 For the above reasons, we affirm the July 10, 2001 order denying PCRA relief and we affirm the judgment of sentence imposed on October 5, 2001.

¶ 25 Order affirmed. Judgment of sentence affirmed.

¶ 26 Judge GRACI files a Concurring Opinion. President Judge DEL SOLE and Judges JOYCE and TODD join the Concurring Opinion.

GRACI, J., Concurring.

¶ 1 I concur in the result.

¶ 2 I fully join that portion of the majority opinion dealing with Appellant's first issue.

¶ 3 I am unable to join the majority's resolution of Appellant's second issue. I agree that Appellant is not entitled to credit for time served for that period before his trial and conviction while he was subject to electronic home monitoring as a condition of bail. I reach that result, however, by a different route.

¶ 4 In reaching its conclusion that Appellant is not entitled to credit for the time he participated in Philadelphia County's electronic home monitoring program as a condition of bail in relation to probation revocation proceedings [7] the majority relies exclusively on the plurality opinion of our Supreme Court in *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001) (plurality). For the reasons that follow, I believe we should not follow that opinion when we are not bound to do so.

¶ 5 Our Supreme Court has explained: "If a majority of the Justices of [the Supreme] Court ... join in issuing an opinion, [that] opinion becomes binding precedent on the courts of this Commonwealth." *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903 (1996). Here, the *Chiappini* plurality relied on by the majority commanded the votes of only three members of a seven-member court: the author, Justice Zappala, then-Chief Justice Flaherty, and Justice Newman. From that part of the opinion dealing with the issue of electronic home monitoring, three justices dissented with opinions: then-Justice, now Chief Justice Cappy, Justice Castille, and Justice Saylor (joining that part of Justice Castille's dissenting opinion). Justice Nigro provided the critical fourth vote on this issue. He disagreed with the analysis of the "Opinion Announcing the Judgment of the Court" and its conclusion "that house arrest constitutes custody for purposes of 42 Pa.C.S.A. § 9760(1)," the credit for time served provision of the Sentencing

---

7. When he was arrested for the current offenses in Delaware County. Appellant was on probation in Philadelphia County. The current charges were the basis for the Philadelphia County Probation Department lodging a detainer against Appellant. He was subsequently granted bail in Philadelphia County, conditioned on his participation in the electronic home monitoring program at issue here. He participated in that program from the date he was granted bail. July 9, 1998, until he was convicted, February 16, 1999.

Code, 42 Pa.C.S.A. §§ 9701–9799.7. However, "on the basis of equity," Justice Nigro agreed that the defendant in *Chiappini* should "receive credit for the 518 days he spent in the electronic monitoring program" as a condition of bail following his conviction at his first trial while the trial court considered his motion for a new trial, while awaiting trial after a new trial had been ordered by the trial court, and after he was convicted after his second trial and while awaiting sentencing. A review of these several concurring and dissenting opinions leads to the inescapable conclusion that a majority of the justices participating in *Chiappini* rejected the analysis of the "Opinion Announcing the Judgment of the Court" on which the majority here relies.

¶ 6 Justice Nigro explained in his concurrence:

> I cannot agree with the majority's [sic] conclusion that house arrest constitutes "custody" for purposes of 42 Pa.C.S. § 9760(1), as I generally frown upon a process that allows people to serve sentences in the comforts of their own home. Instead, in my view, the Superior Court properly concluded in *Commonwealth v. Shartle* that time spent "in custody" must be the "equivalent of time served in an institutional setting." [438 Pa.Super. 403] 652 A.2d 874, 877 ( [Pa.Super.] 1995).

*Chiappini*, 782 A.2d at 502.

¶ 7 In his concurring and dissenting opinion, Justice (now Chief Justice) Cappy said:

> I disagree with the majority [sic] on the second question presented. Where a defendant is permitted pretrial bail with home monitoring as a condition thereof, I do not believe that the defendant is entitled to credit on his sentence for time spent at home. *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991);

*accord Commonwealth v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (1991).

*Id.* at 503 (footnote omitted).

¶ 8 In his concurring and dissenting opinion, Justice Castille, joined by Justice Saylor, synthesized these two views, explaining:

> Like Justice Nigro, I find further support for this conclusion in the Superior Court's decision in *Commonwealth v. Shartle*, 438 Pa.Super. 403, 652 A.2d 874 (1995). There, the Superior Court found that a defendant was not entitled to credit against her sentence for time spent in a home confinement program from the time of her arrest until her preliminary hearing. The court pointed to the non-custodial nature of a sentence served in one's home and concluded that it is "not the equivalent of time served in an institutional setting." *Id.* at 409, 652 A.2d at 877.
>
> Finding the term "custody" in 42 Pa. C.S. § 9760 to be synonymous with the term "imprisonment" in 75 Pa.C.S. § 3731, the Superior Court applied this Court's holdings in *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991) (holding that sentences of imprisonment pursuant to 75 Pa.C.S. § 3731 must be served in institutional settings) and *Commonwealth v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (1991) (credit for time served in an inpatient alcohol rehabilitation program is time served in an institutional setting and therefore imprisonment pursuant to 75 Pa.C.S. § 3731). In *Conahan*, this Court had expressed its concerns with awarding sentencing credit for time spent in a home confinement program:
>
>> In *Kriston*, we were concerned with the non-custodial nature of a sentence being served in a personal residence. While it is true that one subject to home monitoring has his liberty re-

strained and risks being sent to prison if he violates the terms of the program, we could not hold that such a sentence was sufficient to satisfy the goals of the Legislature given the abundant amenities and nonrehabilitative temptations present in the home. *Id.* at 203, 589 A.2d at 1109.

Our reasoning in *Kriston* and *Conahan* should apply with equal force here. Release on any form of bail necessarily restricts one's liberty. But release to a home confinement program does not even begin to approach the sort of restrictions that necessarily attend an institutionalized setting. A defendant in a home confinement program is free to move about in his home, eat, watch television, sleep in his own bed, socialize with family and friends and otherwise enjoy the comforts of his home at will. Being told the judicial equivalent of "go to your room" in no way approaches being ordered to pack a few belongings, leave that home, and report to a prison cell. In light of the fundamental and obvious distinction between time spent in an institutional setting and time spent dallying at home subject only to sporadic monitoring, I would find that appellant is not entitled to credit against his prison sentence for time he spent at home on bail subject to electronic monitoring.

*Id.* at 504–05.

¶ 9 *Kriston* and *Conahan* (relied upon by Justice (now Chief Justice) Cappy) were the underpinings of our decision in *Shartle* (relied upon by Justices Nigro, Castille and Saylor). Thus these opinions, and not the opinion announcing the judgment of the Court in *Chiappini*, should guide us. I would follow *Shartle* and hold that Appellant's "pre-trial confinement to [his] home was not the equivalent of time served in an institutional setting. There-

fore, the [electronic] home monitoring program to which [he] was subjected did not meet the statutory requirement of custody as set forth at 42 Pa.C.S. § 9760(1). As such, the trial court did not err by refusing to give [Appellant] credit for time" spent in the electronic home monitoring program. *Id.* at 877.

¶ 10 I realize that as a court *en banc* we are not bound to follow prior panel decisions of this Court. *Commonwealth v. Snyder,* 761 A.2d 584 (Pa.Super.2000). Nonetheless, I believe that *Shartle* sets forth the better view and it, and not the opinion announcing the judgment of the Court in *Chiappini,* should be followed.

¶ 11 Moreover, *Chiappini* and the view expressed by the majority here, is fraught with practical difficulties. *Chiappini* and the majority both emphasize that whether a specific electronic home monitoring program employed as a condition of bail will satisfy the "custody" requirement of section 9760(1) must be determined on a case-by-case basis. *Chiappini,* 782 A.2d at 501 n. 12; Majority Opinion, at 74, 76–77. This conclusion will necessitate hearings, as utilized in this case, into the particulars of every such program around the Commonwealth. This case points out a particular problem in this regard. Here, the Delaware County Court of Common Pleas had to inquire into the particulars of the bail-related electronic home monitoring program of Philadelphia County. We have the great potential of a hodge-podge of differing results based on nuances or perceived nuances of all of the programs throughout the Commonwealth. These will undoubtedly lead to a plethora of appeals where we will be required to resolve what will largely be fact-based determinations. A bright line rule, as that established by *Shartle,* avoids these problems.

¶ 12 Additionally, the opinion announcing the judgment of the court in *Chiappi-*

*ni,* in concluding its general discussion of the concept of "custody," relied on *Commonwealth ex rel. Paulinski v. Isaac,* 483 Pa. 467, 397 A.2d 760, 763 (1979), for the proposition that "to satisfy the custody requirement for a habeas corpus petition, it was sufficient that a person demonstrate that they [sic] were subject to restraints on their [sic] liberty 'not shared by the public generally.'" *Chiappini,* at 498. To be sure, the three-justice opinion in *Chiappini* apparently sought to temper this broad language. Immediately before noting that "[w]hether other [electronic home monitoring] programs fall within the meaning of the term custody is a question that will need to be examined in each individual case[,]" *id.,* at 501, n. 12, the *Chiappini* plurality stated, "[t]he restrictions placed upon Appellant here went well beyond the restrictions typically employed by a court in releasing a defendant on his own recognizance or upon a condition that a defendant not leave the jurisdiction of the court." *Id.* at 501. This caveat notwithstanding, it is easy to imagine the good defense counsel who will craft arguments that other conditions of bail equate to electronic home monitoring for purposes of receiving credit for time served. The courts, including this Court, will have to deal with these claims, too, on a case-by-case basis.[8] Following *Shartle* avoids these problems.

¶ 13 Lastly, I take issue with the majority's treatment of our panel decision in *Commonwealth v. McCalman,* 795 A.2d 412 (Pa.Super.2002). Whether it intended to or not, the *McCalman* panel elevated

the opinion announcing the judgment of the court in *Chiappini,* which was not precedential as explained above, to binding precedent for the trial courts. *See Commonwealth v. Travaglia,* 792 A.2d 1261, 1266, n. 9 (Pa.Super.2002) (recognizing that Supreme Court's opinion in *Commonwealth v. Trivigno,* 561 Pa. 232, 750 A.2d 243, 257 (2000) was plurality but adopting it nonetheless). Panel opinions of this Court are binding precedent and must be followed by the trial courts until either reversed by a higher court or overruled by either this Court sitting *en banc* or by a higher court. *Marks v. Nationwide Ins. Co.,* 762 A.2d 1098, 1101 (Pa.Super.2000), following *Sorber v. American Motorists Ins. Co.,* 451 Pa.Super. 507, 680 A.2d 881, 882 (1996) ("as long as the decision has not been overturned by our Supreme Court, a decision of our Court remains binding precedent"). I believe *McCalman* was wrongly decided for the reasons set forth above. In order to avoid confusion on this point, I would clearly overrule *McCalman.*

¶ 14 Accordingly, I concur in the result reached by the majority.[9]

¶ 15 President Judge DEL SOLE and Judges JOYCE and TODD join the Concurring Opinion.

---

8. And the courts will also be faced, undoubtedly, with claims of ineffective assistance of counsel from those defendants whose lawyers did not advance these arguments.

9. While the majority here has concluded that the electronic home monitoring involved in this case does not qualify for credit for time served, by adopting *Chiappini's,* several factor

analysis, the opportunity for a windfall persists. Accordingly, I echo Justice Castille's observation in *Chiappini* that "[t]he General Assembly, of course, is free to amend the subject legislation to prevent the windfall endorsed by the majority in future cases." *Id.* at 507, n. 3.