**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Thomas W. DRUCE, III, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.
Filed Feb. 11, 2005.

William Costopoulos, Lemoyne, for appellants.

Edward M. Marsico, Jr., Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: BENDER, PANELLA and MONTEMURO *, JJ.

OPINION BY BENDER, J.:

¶1 Thomas W. Druce, III, appeals from the May 6, 2004 order that essentially denied his request for credit for time served while on bail pending appeal where he was subject to, *inter alia,* electronic monitoring and an overnight curfew. He raises two issues that implicate the legality of his sentence. First, he challenges the court's decision to deny credit as he requested. Second, he challenges, for the first time in this appeal, the legality of his sentence in light of the United States Supreme Court's decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We affirm.

¶2 In the opinion from our Court on Appellant's direct appeal from his judgment of sentence, we set forth the following factual history:

Appellant is Thomas W. Druce, III, a prominent figure in state politics and, until mid–2000, an eight-year member of the Pennsylvania House of Representatives. In September of 2000, appellant pled guilty to a number of charges filed against him in connection with the death of Kenneth Cains. On July 27, 1999 at approximately 10:30 PM, appellant was

* Retired Justice assigned to the Superior Court.

driving his Jeep Grand Cherokee on Cameron Street in Harrisburg when he struck Mr. Cains as he was walking along the street. Appellant did not stop at the accident scene, but rather continued driving through town. The injuries Mr. Cains suffered as a result of the impact were fatal.

A police investigation into the accident initially yielded no results. Approximately five months later, Dauphin County law enforcement authorities received an anonymous tip that appellant was involved. In January of 2000, investigators interviewed appellant. According to the affidavit of probable cause, appellant confirmed to police that "he struck something at that location [Cameron Street], . . . indicated that he was looking down toward the passenger seat at the time of the collision . . . [and] thought he had struck a sign." Appellant further admitted to police that he made a claim to his automobile insurance company, declaring that he was involved in an automobile accident on that night, but at a different location.

. . . . [I]t appears that the following facts are undisputed. First, within hours of the incident appellant stopped at a convenience store, bought duct tape and made some repairs to his Jeep. Second, the day after the incident appellant told his insurance company that he was involved in an accident while driving on the Pennsylvania Turnpike and that the accident caused damage to his Jeep. Third, in the days following the incident, appellant brought his Jeep to an auto repair shop and requested prompt repair of the damage, which included a cracked windshield. Fourth, appellant traded in his Jeep after the repairs were accomplished and leased a new vehicle. Fifth, two of appellant's colleagues asked him whether it was his vehicle that was involved in the Cameron Street

accident and appellant replied that it was not.

*Commonwealth v. Druce,* 796 A.2d 321, 323–24 (Pa.Super.2002) (footnote omitted). On September 11, 2000, Appellant pled guilty to charges of Accidents Involving Death or Personal Injury (75 Pa.C.S. § 3742); Tampering With or Fabricating Physical Evidence (18 Pa.C.S. § 4910(1)); Insurance Fraud (18 Pa.C.S. § 4117); and summary offenses including Careless Driving (75 Pa.C.S. § 3714); Driving Vehicle at Safe Speed (75 Pa.C.S. § 3361); Immediate Notice of Accident to Police (75 Pa.C.S. § 3746); and Duty to Give Information and Render Aid (75 Pa.C.S. § 3744). In exchange for this plea, the Commonwealth agreed to drop a charge of Homicide by Vehicle (75 Pa.C.S. § 3732). *See id.* at 324–25.

¶ 3 On October 27, 2000, the trial court sentenced Appellant to consecutive terms of one to two years' imprisonment for Accidents Involving Death; six months to one year imprisonment for Tampering With or Fabricating Physical Evidence; and six months to one year imprisonment for Insurance Fraud. *See id.* at 326. The aggregate sentence is two to four years' imprisonment. As we described in our previous opinion:

> At the sentencing hearing, Judge Kleinfelter also revoked appellant's bail.
> . . . .
> Appellant also filed an emergency petition with this court, requesting that he be granted bail pending appeal. After this court denied his request for bail, appellant sought relief from the Pennsylvania Supreme Court via an emergency petition. That court granted appellant's request and remanded the matter to the trial court for imposition of bail pending appeal.
> On remand, Judge Kleinfelter did not preside over the bail hearing; rather,

the matter was assigned to the Honorable Todd A. Hoover. Judge Hoover ultimately set bail at $600,000.00, far in excess of appellant's request of $40,000.00 and higher than the Commonwealth's recommendation of $500,000.00. Judge Hoover also imposed conditions on appellant's release, including electronic home monitoring pursuant to Dauphin County's Adult Probation Department and an 8:00 PM to 6:00 AM curfew.

*Id.* at 326–27 (footnote omitted).

¶ 4 We affirmed Appellant's judgment of sentence on March 15, 2002. *Id.* at 327. Our Supreme Court granted Appellant's petition for allowance of appeal and affirmed Appellant's judgment of sentence on April 29, 2004. *Commonwealth v. Druce,* 577 Pa. 581, 848 A.2d 104 (2004). Later that same day, the Commonwealth filed a petition to revoke bail and set credit for time served according to 42 Pa.C.S. § 9760 (governing credit for time served). Following a hearing on May 6, 2004, the trial court revoked bail and granted credit for the 56 days Appellant was actually incarcerated pre-bail (*i.e.,* the court committed Appellant on his original sentence minus time served from October 27, 2000, to December 21, 2000). Appellant filed a motion for reconsideration, which the trial court denied on May 12, 2004. Appellant filed the instant appeal on May 17, 2004, in which he challenges the May 6, 2004 order revoking bail and granting only 56 days' credit.

¶ 5 In his brief, Appellant raises the following "Statement of Questions Involved":

A. WHETHER APPELLANT'S JUDGMENT OF SENTENCE IS ILLEGAL TO THE EXTENT THAT THE TRIAL COURT REFUSED TO GRANT HIM ANY CREDIT TOWARD HIS SENTENCE FOR TIME SERVED UNDER THE COUNTY'S HOME DETENTION/ELECTRONIC MONITORING PROGRAM, WHICH CONSTITUTES "CUSTODY" FOR PURPOSES OF SECTION 9760(1) OF THE SENTENCING CODE AND BECAUSE THE TERMS AND CONDITIONS OF THE 3 YEARS, 4 MONTHS OF HIS BAIL PENDING APPEAL WERE CLEARLY PUNITIVE IN NATURE?

Answered in the Negative by the Court Below.

B. WHETHER APPELLANT'S JUDGMENT OF SENTENCE IS ILLEGAL BECAUSE THE TRIAL COURT UNCONSTITUTIONALLY IMPOSED AGGRAVATED SENTENCES FOR INSURANCE FRAUD AND TAMPERING WITH EVIDENCE UNDER THE SENTENCING GUIDELINES WHEN ONLY A JURY BEYOND A REASONABLE DOUBT MAY FIND AN AGGRAVATING FACTOR THAT INCREASES A CRIMINAL SENTENCE?

Not answered by the Court below.

Appellant's brief at 4. The trial court did not answer the second question in its opinion filed pursuant to Pa.R.A.P. 1925(a) because Appellant did not raise it in his Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal but, rather, raised it for the first time in this appeal. However, like the first question, the second question raises the legality of Appellant's sentence, and "[u]nlike discretionary aspects of sentence, the legality of sentence is never waived and may be the subject of inquiry by an appellate court *sua sponte.*" *Commonwealth v. Kitchen,* 814 A.2d 209, 214 (Pa.Super.2002). *See also* 42 Pa.C.S. § 9781(a) (indicating that "[t]he defendant ... may appeal as of

right the legality of the sentence"). Additionally, with regard to both questions, the issue of whether a sentence is illegal is a question of law; therefore, our task is to determine whether the sentencing court erred as a matter of law and, in doing so, our scope of review is plenary. *Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056, 1057 (2001). We now examine each question in the order presented.

¶ 6 In his first issue, Appellant argues that the trial court erred by refusing to give him credit for time served, under 42 Pa.C.S. § 9760, while on bail, subject to conditions of house arrest with electronic monitoring, pending appeal. Appellant emphasizes that he is not seeking credit for hours he spent at work as approved by his probation officer or the vacation he took with family with court approval. *See* Appellant's brief at 14–15. Rather, he wants credit only for the time he was under house arrest with electronic monitoring at his residence in Bucks County. This time is for 10 hours each day from December 21, 2000, to April 2001 when his curfew was 8 p.m. to 6 a.m., and for 8 hours each day from April 2001 to May 6, 2004, when his curfew was 10 p.m. to 6 a.m. *Id.* at 15. Essentially, he wants credit for the evening, night, and early morning curfew hours spent at home in his residence in Bucks County during the time he was out on bail pending appeal. We conclude initially that the trial court did not err by refusing to grant the credit requested.

¶ 7 The provision under which Appellant seeks credit is 42 Pa.C.S. § 9760(1), which directs the court to give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent *in custody* as a result of the criminal charge

for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1) (emphasis added). Our purpose is to determine if the trial court was correct in determining that Appellant was not "in custody" for purposes of this section during those overnight curfew hours where he was confined to his residence in Bucks County or elsewhere with permission.[1]

■■■ ¶ 8 In *Commonwealth v. Vanskiver,* 819 A.2d 69 (Pa.Super.2003) (*en banc*), we examined the question of the meaning of the term "time spent in custody" for purposes of section 9760(1). *See id.* at 74. We stated:

Our Supreme Court addressed this issue, as a matter of first impression, in the plurality opinion of *Commonwealth v. Chiappini,* 566 Pa. 507, 782 A.2d 490 (2001). A plurality of the Supreme Court concluded that the defendant in *Chiappini* was entitled to credit for time served under the Lackawanna County Home Confinement/Electronic Monitoring Program because the restrictions of the program, as employed in that particular case, constituted "custody" for purposes of section 9760(1). *See id.* at 499 n. 10. Recognizing that the Sentencing Code does not provide a definition of "custody," the Court turned to the Statutory Construction Act, 1 Pa.C.S. § 1903(a), and relied on common and approved usage of the term "custody." *Id.* at 498. The Court concluded that custody includes forms of restraint other than imprisonment. *Id.* at 500–501. Al-

---

1. In other words, at the hearing on May 6, 2004, Appellant sought credit only for curfew hours, which were from 8 p.m. to 6 a.m. from December 21, 2000 until April 11, 2001, when his curfew changed to 10 p.m. to 6 a.m. *See* N.T. Hearing, 5/6/04, at 5–7.

though "imprisonment" is one form of "custody," custody is a much broader term. *Id.* at 500. Since the legislature chose the term "custody," rather than the term "imprisonment," when drafting section 9760, the Court rejected the Commonwealth's argument that forms of restraint other than imprisonment cannot be counted for credit under section 9760. *Id.* The Court stated[:]

> [i]n determining whether a person has spent time in custody it is necessary to examine the extent of control exercised by those in authority. The type of technology employed in this case has made it possible for prison authorities to restrain and severely limit a person's freedom by limiting his ability to move about freely to the confines of his home. The restrictions placed upon Appellant here went well beyond the restrictions typically employed by a court in releasing a defendant on his own recognizance or upon a condition that a defendant not leave the jurisdiction of the court.

*Id.* at 501. The Court limited its discussion to the Lackawanna County Electronic Monitoring Program. The Court indicated, "[w]hether other programs fall within the meaning of the term custody is a question that will need to be examined in each individual case." *Id.* at 501 n. 12.

In finding that the Lackawanna County electronic home monitoring program constituted custody, the plurality noted the following factors: (1) the program is administered by Lackawanna County prison authorities; (2) a participant in the program is considered an "inmate" of the Lackawanna County prison and his residence is considered to be a jail without bars; (3) a participant must at all times wear a non-removable ankle or wrist bracelet; (4) a monitoring device is connected to the participant's telephone and corrections personnel are permitted to enter the participant's home to maintain this equipment; (5) the program restrictions are monitored by telephone calls and visits by home detention staff members; and (6) a participant must cooperate with home detention staff and permit them to enter his or her residence upon request at any time, day or night. *Id.* at 497.

*Vanskiver*, 819 A.2d at 74–75. Our overall task is to "examine the rules and regulations of each program on a case-by-case basis by considering the extent of control exercised by those in authority and the restraints and limitations on the freedom of the individual seeking credit for time served." *Id.* at 77. In *Vanskiver*, for example, we concluded that the appellant's participation in a Delaware County electronic home monitoring program did not constitute custody. Although the appellant had to constantly wear an electronic ankle bracelet that permitted monitoring of his distance from his home telephone, which factor favored a finding of custody, other factors militated against finding custody. For example, the program was administered by the trial court rather than prison authorities, officials of the program were not permitted to enter the appellant's home without his consent to repair malfunctioning monitoring equipment, he was not subject to warrantless searches, and he was routinely permitted to engage in many of his regular activities outside the home. *Id.* at 75–76.

¶ 9 As *Vanskiver* instructs, we examine the individual circumstances of the case before us to determine whether the conditions imposed upon Appellant during his period on bail pending appeal constitute "custody" for purposes of credit under section 9760. As noted above, in making this determination, we consider "the extent of control exercised by those in authority and the restraints and limitations on the

freedom of the individual seeking credit for time served." *Id.* at 77.

¶ 10 The record supports the trial court's decision to deny credit for the overnight hours spent at home during each curfew period beginning at 8 p.m. or 10 p.m. and ending at 6 a.m. the following morning. Appellant testified that his main residence is in New Britain Township, Bucks County, where he lives with his wife and three children. N.T. Hearing, 5/6/04, at 8. This was the residence where Dauphin County probation officer Robert Baylor, with whom Appellant frequently communicated, installed electronic monitoring equipment to enforce Appellant's overnight curfew. *Id.* at 9, 65. Appellant was required to wear an electronic monitoring device at all times, except for a one week period where Appellant was on vacation with his family in New Jersey where he was not subject to monitoring or a curfew. *Id.* at 24.

¶ 11 Although he wore the electronic monitoring device at all times, Appellant was not required to be home except during overnight curfew hours. *Id.* at 26. Indeed, the only reason the electronic monitoring device was on Appellant was because he chose to reside in Bucks County, outside of Dauphin County limits, and this was the best way for the Dauphin County Adult Probation and Parole Office to maintain contact with Appellant. *Id.* at 42. The electronic monitoring was used solely to enforce provisions of an overnight curfew. *Id.* at 43. During non-curfew hours, Appellant was free to come and go as he pleased. *Id.*

¶ 12 However, Appellant's bail conditions required him to maintain contact with the Dauphin County Adult Probation and Parole Office, which is an arm of the court, not an arm of the prison system. *Id.* at 42. On a "daily basis, or at least weekly" Appellant "communicated with Mr. Terry Davis [Director of Dauphin County Adult Probation and Parole] through electronic emails giving [his] schedule." *Id.* at 8–9. For the weekend, Appellant would provide an overview of his schedule. *Id.* at 9.

¶ 13 On dozens of occasions, with permission freely granted, Appellant would stay at his second residence in Susquehanna Township outside of Harrisburg. *Id.* at 9, 37. This second residence was not equipped with electronic monitoring. *Id.* at 10. Whenever Appellant would report to Harrisburg, he was instructed to page Mr. Baylor. *Id.* at 65. Overall, Appellant did not stay overnight at home on approximately 50 occasions and received extensions on his curfew about 30 to 35 times. *Id.* at 56–57. Mr. Davis always granted Appellant's requests to be out past curfew hours. *Id.* at 44. Appellant would seek, and easily receive, approval from authorities to extend his curfew for events related to work or, for example, family activities such as his child's baseball game or school play. *Id.* at 16–17. Mr. Davis even granted Appellant's requests to leave the state on several occasions, including a one week trip to the New Jersey shore for vacation, free of the electronic monitoring ankle bracelet. *Id.* at 44–45.

¶ 14 We further recognize that the bail conditions prohibited Appellant from possession or consuming alcoholic beverages. *Id.* at 28. The bail conditions further provided that Appellant be subject to random and unannounced visits, and contact by the Dauphin County Adult Probation and Parole, who monitored Appellant, in order to ensure compliance with bail provisions. *Id.* at 29. Mr. Davis ordered that there would not be searches of Appellant's person. *Id.* at 43. However, Mr. Davis never communicated this to Appellant. *Id.* at 60. Nevertheless, Appellant stated that authorities never searched his person, residences, or office. *Id.* at 11. The bail

conditions also required Appellant to cooperate if a probation officer needed to enter Appellant's home to maintain the electronic monitoring equipment. *Id.* at 60. Mr. Davis had no authority to arrest Appellant because he was not under probation supervision but, rather, in a bail program overseen by the court. *Id.* at 52.

¶ 15 Indeed, there are a few features of Appellant's bail conditions that favor a finding of credit—*e.g.*, the fact that probation department officials could conduct random, unannounced visits and the requirement that Appellant not possess or consume alcoholic beverages. However, we cannot conclude that Appellant was in custody for purposes of section 9760 when he was able to do essentially as he pleased during non-curfew hours, was overseen by the courts rather than the prison system, and was granted every curfew extension and travel request. Curfew hours were overnight, and Appellant admitted to retiring to sleep generally around 11 p.m. or midnight, and arising at around 7 a.m. the next morning. *Id.* at 13–14. Thus, Appellant essentially asked the court to credit him for overnight sleeping hours, which the court correctly refused to do. We are to evaluate each credit request on a case-by-case basis and, given the overall picture of control exercised by authorities and the restraints and limitations on Appellant's freedom, we cannot conclude that he was in custody for purposes of granting credit for hours spent each night under a curfew.

¶ 16 Accordingly, we affirm the trial court's order granting credit only for the 56 days Appellant spent incarcerated until bail was set. *See id.* at 2. The hours spent at home (or away with permission) during each overnight curfew period that Appellant seeks to have credited do not qualify as "time in custody" for purposes of section 9760.

¶ 17 In his second issue, Appellant argues that now, under the authority of the United States Supreme Court's decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), his sentences for insurance fraud and tampering with evidence are illegal because the court imposed sentences in the aggravated range of our Sentencing Guidelines on these counts, without the benefit of a jury finding the aggravating factor or factors that would justify these sentences.[2] In support of his argument, Appellant relies entirely on the decision in *Blakely.*

■ ¶ 18 Recently, we were faced with the same issue in *Commonwealth v. Bromley,* 862 A.2d 598 (Pa.Super.2004). In *Bromley,* the appellant claimed that his sentence in the aggravated range for possession with intent to deliver marijuana was illegal because a judge, rather than a jury, made a " 'judicial determination of a non-objective fact not charged,' and thus [violated] his Sixth Amendment right to trial by jury." *Id.* at 600. We rejected this argument. Like Appellant in the instant case, the appellant in *Bromley* "was not subjected to a sentencing scheme where a factor increased his sentence beyond the statutory maximum; he was not even sentenced beyond the guidelines. Rather, he received a sentence in the aggravated range." *Id.* at 601. As we further stated in *Bromley:*

[I]n the Pennsylvania [sentencing] scheme, ... there is no requirement that a sentencing court make a specific finding prior to sentencing in the aggravated range. The sole requirements are that the judge follow the general principles outlined above [*see* 42 Pa.C.S.

2. The aggravating factor cited by the court was that these charges arose from Appellant's effort to conceal a homicide.

§ 9721(b) ] and provide reasons for the sentence which he or she imposes.

. . .

The significant finding of both *Apprendi* [3] and *Blakely* appears to be that if a sentencing scheme mandates a certain sentence for a certain crime and only allows the imposition of a greater sentence based upon specific factual findings about the underlying crime, then, unless those factual findings are made by the jury, the scheme runs afoul of the Sixth Amendment. Thus, we hold that *Blakely* does not implicate the Pennsylvania scheme, where there is no promise of a specific sentence, and a judge has the discretion to sentence in the aggravated range so long as he or she provides reasons for the sentence.

*Id.* at 602–603. Thus, Appellant's argument, which relies solely on the applicability of *Blakely*, fails for the same reasons the argument failed in *Bromley*.[4]

¶ 19 For the foregoing reasons, we affirm the May 6, 2004 order setting credit for time served and revoking bail.

¶ 20 Order affirmed.

3. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The *Apprendi* Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.*, 120 S.Ct. at 2362–63. The *Apprendi* Court concluded that a New Jersey sentencing scheme that permitted the sentencing judge to impose a ten-year enhancement on the maximum sentence if he or she found, by a preponderance of the evidence, that the underlying crime was also a hate crime, resulted in a due process violation.

4. We make no enunciation today about the applicability of *Blakely* under circumstances other than those presented by Appellant in the instant case.