J-S13036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYVON AKEEM MO MORGAN | : | |
| | : | |
| Appellant | : | No. 1225 MDA 2021 |

Appeal from the PCRA Order Entered August 20, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002985-2017


BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 05, 2022**

Appellant Shayvon Akeem Mo Morgan appeals from the Order entered

in the Court of Common Pleas of York County on August 20, 2021, denying

his amended petition filed pursuant to the Post-Conviction Relief Act (PCRA)[1]

following a hearing.  We affirm.

A prior panel of this Court set forth the relevant facts and procedural

history herein as follows:

> The following facts were gleaned from the trial court's Rule
> 1925(a) opinion: Appellant and his co-conspirator, Dysheem
> Jones, fled from the scene of an automobile accident and ran
> towards Rutter's Dairy. There, [A]ppellant and Jones approached
> Dennis Hoke, a Rutter's employee, and offered him $100 to give
> them a ride out of the area. When Hoke asked appellant and Jones
> where they wanted to go, they responded "anywhere but here."
> Hoke described their demeanor as being "very, very nervous."
> Although Hoke saw neither [A]ppellant nor Jones deposit anything

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

on the ground, after they left the area Hoke observed a clear plastic bag of marijuana and another bag of a white powdery substance, consistent with crack cocaine, lying on their path. (Trial court opinion, 11/8/19 at 3-5.)

Appellant and Jones proceeded to enter a Budget Rental. When asked by the manager, Joseph Charles, if he could help them, they responded that they were waiting for their girl to come. Then [A]ppellant went into the bathroom, and Jones went into a backroom. Charles asked Jones if he could be of assistance, and Jones replied that he was just leaving. Charles informed Jones that the back door was locked. While Jones was attempting to exit through the front door, State Trooper Patrick Kelly was entering the building. Jones was taken into custody. A search revealed Jones was in possession of cocaine, heroin, and marijuana. (**Id.** at 5-6, 9.)

Appellant exited the bathroom and surrendered to Trooper Kelly. Although no drugs were found on his person, he was in possession of $506 in cash. Shawn Chambers, a Budget employee, testified that she had cleaned the bathroom the previous day. She stated that she put the bathroom trash can near the bathroom door with a new trash bag draped over its side. When she returned the day of the incident, she put in the new bag. At that time, all that was in the trash can were some paper towels. Chambers further testified that no one had entered the bathroom prior to [A]ppellant. Trooper Richard Sentak testified that he searched the bathroom and recovered a firearm from the trash can. The firearm was operable and [A]ppellant was ineligible to possess a firearm. (**Id.** at 6-10.)

On September 20, 2018, a jury convicted [A]ppellant of all counts. Appellant was sentenced on January 3, 2019.[2] Timely post-sentence motions were filed and denied by the trial court. Appellant timely appealed. The trial court ordered appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and he timely complied. Thereafter, the trial court filed its Rule 1925(a) opinion.

*Commonwealth v. Morgan*, No. 625 MDA 2019, unpublished memorandum

at 1  (Pa.Super. filed June 23, 2020).

---

[2] Appellant was sentenced to an aggregate term of six (6) years to thirteen (13) years in prison.

On November 13, 2020, Appellant filed a PCRA petition, *pro se*. Appellant secured counsel, and on June 1, 2021, counsel filed an Amended Petition for Relief Under the Post Conviction Relief Act; a further amendment was submitted on August 2, 2021, wherein Appellant, citing 42 Pa.C.S.A. § 9543(a)(2)(vi), raised a claim of after discovered, exculpatory evidence in the form of testimony of co-defendant Dysheem Jones.

A PCRA hearing was held on August 6, 2021. After indicating that it had considered the relevant testimony, record evidence, and caselaw, the PCRA court denied Appellant's petition on August 18, 2021.

Appellant filed a timely appeal on September 16, 2021, and a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on September 27, 2021. The PCRA court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on November 4, 2021. Therein, the court adopted its reasoning and opinion set forth in its Opinion and Order of August 18, 2021.

In his brief, Appellant presents the following question for this Court's review:

> Did the [PCRA] court commit an error of law and improperly dismiss [Appellant's] PCRA petition because [Appellant] is entitled to PCRA relief where exculpatory evidence presented in the form of the testimony of Dysheem Jones met the four-prong test for after-discovered evidence?

Brief for Appellant at 4.

Appellant maintains that the testimony co-defendant Jones is prepared to offer is of such a nature that a different verdict would be

- 3 -

likely at a new trial. Brief for Appellant at 11. Appellant avers that the PCRA Court based its decision to deny him PCRA relief on "incorrect suppositions and a palpable bias against [him]" and that the court held him to a higher standard of review than a preponderance of the evidence. Appellant further claims the PCRA court erroneously found Jones to be incredible without legal support or support in the record. Appellant concludes that the court's order should be reversed and that he should be afforded a new trial based upon this new evidence.

As this Court recently reiterated, our standard of review of an order denying PCRA relief is well-established:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Mason*, 634 Pa. 359, 130 A.3d 601, 617 (2015) (citations and quotation marks omitted).

> To be entitled to PCRA relief, a petitioner must plead and prove by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2), which provides, in relevant part:

- 4 -

> (2) That the conviction or sentence resulted from one or more of the following:
>
> * * *
>
> (vi) The unavailability at the time of trial of exculpatory **evidence** that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
>
> 42 Pa.C.S. § 9543(a)(2)(vi).
>
> To establish such a claim, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. ***Commonwealth v. Cox***, 636 Pa. 603, 146 A.3d 221, 228 (2016) (citations and quotation marks omitted). ***See also Commonwealth v. Small***, ––– Pa. ––––, 238 A.3d 1267, 1273 n.1 (2020); ***Commonwealth v. D'Amato***, 579 Pa. 490, 856 A.2d 806, 823 (2004).

***Commonwealth v. Murchison***, 2022 WL 589122, at *7-8 (Pa.Super. Feb. 28, 2022).

In addition, we note that credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. ***See Commonwealth v. Small***, 189 A.3d 961, 978-79 (Pa. 218) (remanding for the PCRA court to make relevant credibility determinations). This Court has stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa.Super. 2010). "In making this determination, a court should consider the integrity of the alleged

after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.*

Herein, the PCRA court explained in great detail why it determined Appellant's after-discovered evidence claim lacks merit:

B. Unavailability at Trial of Exculpatory Evidence

On the eve of his PCRA hearing and *after* the originally scheduled PCRA hearing date, on August 2, 2021, [Appellant] added a new PCRA claim. The new claim was that [Appellant's] codefendant, Dysheem Jones, was willing to testify that it was he, not [Appellant], who had placed the firearm in the trashcan at the Budget Rental. Mr. Jones did so testify at the PCRA hearing. [Appellant] avers that this amounts to exculpatory evidence not available at the time of trial that would have changed the outcome of his case. Amended Petition for Relief Under the Post Conviction Relief Act, at unnumbered page 2 (citing 42 Pa.C.S. § 9543(a)(2)(vi). For the following reasons, we disagree.

As a brief aside, the Commonwealth addressed this claim as though it were brought as an ineffective assistance of counsel claim. 42 Pa.C.S. § 9543(a)(2)(ii). To that end, the Commonwealth cited the case of *Commonwealth v. Clark*, 961 A.2d 80 (Pa. 2008), which deals with ineffective assistance of counsel claims concerning the failure to call a potential witness. In *Clark*, our Supreme Court states the following:

Where a defendant claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well an adequate assertion that the substance of the purported testimony would make a difference in the case. Generally, we require a defendant to demonstrate that:

(1) the witness existed, (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

> *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007).

*Id*., at 90 (some internal citations omitted). The Commonwealth, having supplied this case law, then argued that Mr. Jones was unavailable to testify, Mr. Jones was, at the time of [Appellant's] trial, unwilling to testify for the defense, and that the absence of the witness was not so prejudicial as to have denied [Appellant] of a fair trial. As to this last prong, the Commonwealth submitted that prejudice was greatly reduced where the jury heard from a defense witness, Mr. Brian Mertz, that he believed Mr. Jones had gone into the bathroom. All of this is accurate and would support denial of such a claim. However, [Appellant] specifically brought his claim under 42 Pa.C.S. § 9543(a)(2)(vi). *See* Amended Petition for Relief Under the Post Conviction Relief Act, at unnumbered page 2.

42 Pa.C.S. § 9543(a)(2)(vi) states as follows:

> *(a) General rule.* — To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
>   **(2)** That the conviction or sentence resulted from one or more of the following:
>   **(vi)** The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

As [Appellant] has brought his claim under 42 Pa.C.S. § 9543(a)(2)(vi) and *not* 42 Pa.C.S. § 9543(a)(2)(ii), our analysis departs from that of the Commonwealth. We, instead, begin with Mr. Jones' credibility.

Mr. Jones was not credible to this [c]ourt. His demeanor, though calm, appeared, to this [c]ourt, to be calculating. We cannot speculate as to that calculus: however, Mr. Jones testified that he, not [Appellant], placed the firearm in the trashcan. Even if Mr. Jones' altruistic statements were credited, there is likely no price Mr. Jones could be made to pay for any untrue testimony. He has already been sentenced for his own crimes and a perjury charge is extremely unlikely to lay based upon the testimony offered. As such, Mr. Jones was free to testify almost risk-free. Jones had a  preexisting criminal relationship with [Appellant], which also renders his belated assumptions of culpability suspect.

And yet, despite Mr. Jones having long been sentenced—his York County matters were settled on February 26, 2019-- this claim was not brought until just before the PCRA hearing-- *despite testimony from [Appellant] that Mr. Jones had been reaching out to him for some time*. On the stand, Mr. Jones' testimony flew in the face of the bulk of the testimony offered at trial and this [c]ourt finds that it was false testimony given in continued support of his accomplice.

Though Mr. Jones' PCRA testimony disagreed with all of the evidence that the jury clearly credited, it did align in *one* detail with that of a defense witness. During the PCRA proceedings, trial counsel testified regarding her elation at discovering Mr. Hertz. Mr. Hertz was the only witness that the defense was able to locate whose story seemed to support that of [Appellant], which was recounted at the PCRA hearing. At the PCRA hearing, [Appellant] testified that, at one point, while he was sitting *on the opposite side of the room* at the Budget Rental, his codefendant entered the bathroom. Trial counsel's excitement aside, this does not fully comport with the testimony of Mr. Hertz. The following exchange occurred between Mr. Hertz and defense counsel:

Defense: So, you testified that all three of you were behind the counter when they first came in?

Hertz: Correct.

Defense: And what happened next?

Hertz: Well, the two were on the one side towards the bathroom and we asked could we help. And they said they were waiting for their girlfriend.

Defense. And after that did you go back to work?

Hertz: Yes, I was still behind the counter working.

Defense: From where all three of you were behind the counter, are you able to see the entrance to the bathroom?

Hertz: No. I can't, no.

Defense: And are you aware did anybody go into that bathroom?

- 8 -

> Hertz: **I *thought* both of them went in *at one time*.**
>
> Defense: Okay. And why did you think both went in?
>
> Hertz: Because I couldn't see them anymore.

(N.T., 9/17/18, at 272-73.) (emphasis added). On cross-examination, the Commonwealth asked and Mr. Hertz answered the following question:

> Cmwlth: Mr. Hertz, did you see either of those two gentlemen with your own eyes go into that bathroom?
>
> Defense: No.

*Id.,* at 275. Very clearly, Mr. Hertz's candid trial testimony did not perfectly align with [Appellant's] testimony, at the PCRA hearing, that [Appellant] was seated across the room when the codefendant entered the bathroom. Rather, Mr. Hertz's testimony only agrees with [Appellant] in that Mr. Hertz *thought* that the codefendant, Mr. Jones, also entered the bathroom. However, Mr. Hertz believed that the codefendants were in the bathroom *at the same time*. And, Mr. Hertz testified that he did not actually see either of the codefendants enter the bathroom. Thus, though he went no further in his testimony than *inferring* that Mr. Jones entered the bathroom, Mr. Hertz's testimony somewhat aligns with Mr. Jones on this one detail.

The facts at issue established, we turn to the law governing newly discovered evidence claims that are offered under the aegis of the PCRA. In *Commonwealth v. Loner*, our Superior Court summarized the applicable law as follows:

> Section 9543(a)(2)(vi) of the PCRA provides for post-conviction relief when a petition can prove a claim of newly discovered evidence. In order to succeed with this claim, the petitioner must establish by a preponderance of the evidence that: (1) the evidence has been discovered after the trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) such evidence is not cumulative; (3) the evidence is not being used solely to impeach credibility; and (4) such evidence would likely compel a different verdict.

- 9 -

836 A.2d 125, 135 (Pa. Super. Ct. 2003) (internal citations and quotations omitted).

Regarding discovery and reasonable diligence, *if* [Appellant] were to be believed, he discovered that his codefendant placed the firearm in the trashcan *after* trial and he could not have obtained this information prior to trial through reasonable due diligence. Regarding this supposed newly discovered evidence, this [c]ourt did not find [Appellant] credible. During the PCRA hearing [Appellant] "guaranteed" that the statement along the lines of "he's got a gun" was made by Dysheem Jones to indicate that the trooper possessed a firearm. When queried by this [c]ourt as to why Mr. Jones would have made such an obvious observation about a trooper in full uniform—when he might have just as easily declared that the trooper possessed a badge—[Appellant] conceded that only Mr. Jones could know for sure. Thus, [Appellant], understandably, was, during the course of the PCRA hearing, making purely self-serving statements. We find that [Appellant] made an equally self-serving statement to place his own firearm on his codefendant. This was a self-serving statement made in conjunction with an equally incredible statement by [Appellant's] incredible accomplice who clearly still harbors affinity for [Appellant]. Their duplicity is further demonstrated by the fact that Mr. Hertz's inference placed [Appellant] *and* Mr. Jones in the bathroom at the *same time*-; whereas, [Appellant] and Mr. Jones placed Mr. Jones in the bathroom *alone*, which makes sense when a story is being manufactured to distance [Appellant] from the gun *and* the possibility that he was present while it was concealed in the trashcan.

[Appellant's] story is unbelievable considering his own credibility. [Appellant's] story does not align with the *one* witness who, as we discussed above, *possibly* also placed the codefendant in the bathroom though he did not see it with his own eyes. It strains credulity beyond the breaking point to believe that [Appellant], who along with his codefendant, nervously requested a ride to anywhere else, would not have been aware that his compatriot was carrying illicit drugs and a firearm. Granted, handguns are almost inherently concealable and so it is *possible*, if the codefendants were credible, that [Appellant] was unaware of the presence of the gun. Though it is a tautology, *if* this were the case *and* Mr. Jones did not inform [Appellant] that he had possessed and placed the gun until *after* [Appellant's] trial then the evidence was not discoverable until after trial. However, as we have clearly indicated, because the codefendants were not

credible in their PCRA testimony, the supposedly unavailable evidence was clearly manufactured evidence. As the [c]ourt finds the evidence in question was not discovered after the trial, but, rather, was *manufactured* after the trial, this claim fails. Nonetheless, we continue on.

For reasonable due diligence, trial counsel's testimony that her entreaties to codefendant's counsel for his state charges went unanswered supports the notion that the information was unavailable. Though this [c]ourt did not find the codefendant to be credible, he did indicate that his federal attorney was urging him to complete his federal matters prior to his state charges. While Mr. Jones was not credible regarding gun possession, this sort of prosaic detail was credible in light of standard legal practice. In fact, trial counsel testified that if roles had been reversed and she were to have been Mr. Jones' attorney, she would not allowed him to testify due to his potential legal exposure.

As for whether the evidence offered is cumulative, it is not. Though Mr. Hertz *potentially* placed the codefendant in the bathroom—and he admitted he did not actually see either codefendant enter and merely inferred that they had, Mr. Hertz's testimony could not speak to what occurred within that bathroom.

The evidence was not offered solely to impeach credibility. Mr. Jones' testimony, if believed, offered substantive evidence as to how the firearm in question happened to be placed in the trashcan.

Mr. Jones' testimony would *not* be likely to compel a different verdict. Joseph Charles testified that he was able to see the store from end-to-end and that only one of the two codefendants entered the bathroom. Moreover, Mr. Charles testified that approximately 45 seconds elapsed from the time that the codefendants entered the store to the arrival of the trooper and that the person who walked to the back room would not have had a chance to enter the bathroom. It is clear from other testimony, including [Appellant's] during the PCRA hearing, that Mr. Jones was the one that walked to the backroom.

Shawn Chambers, for all her potential flaws as a witness, admitted that she could not see the bathroom. However, her testimony agreed with that of Mr. Charles that, upon the arrival of the trooper, *one* of the codefendants entered the bathroom while the other proceeded to a backroom area.

Trooper Patrick Sentak testified that upon his arrival he saw the codefendants standing to one side of the Budget Rental. In agreement with Mr. Charles and Ms. Chambers, Trooper Sentak

- 11 -

saw Mr. Jones move towards the opposite side of the store and he saw [Appellant] enter the bathroom.

Mr. Hertz could not see anyone enter the bathroom. He merely inferred that both codefendants had done so *because he lost sight of them*. The testimony of a codefendant would not compel a jury to arrive at a different verdict in light of at least two witnesses who claimed to have seen [Appellant], but not Mr. Jones, enter the bathroom and who were buttressed by the testimony of the, admittedly, problematic Ms. Chambers. Moreover, again, this [c]ourt did not find [Appellant] or Mr. Jones to be credible at the PCRA.

The evidence undergirding this claim is not newly discovered evidence. It is manufactured evidence. And the outcome would not have been different if the jury had heard the evidence. However. before concluding our analysis, we would consider the case of *Commonwealth v. Fiore*, 780 A.2d 704 (Pa. Super. Ct. 2001).

In *Fiore*, the defendant's codefendant, a Mr. Zdrale, was accused of being the middleman in a murder-for-hire plot set in motion by the defendant. *Id.*, at 707-08. The defendant filed a PCRA petition premised upon newly discovered evidence:

> In his petition for collateral relief, Appellant alleges that the testimony of Mr. Zdrale, who was unavailable to testify at Appellant's second trial because he was awaiting his own separate trial on the same charges, would have established that Appellant was innocent of the charges. Mr. Zdrale died on July 29, 1999. His testimony was preserved, in anticipation of his death, for the PCRA hearing and any further proceedings via video deposition on October 16, 1998.

*Id*., at 710-11. Specifically, Mr. Zdrale's testimony was that, while the defendant and Mr. Zdrale did not like the purported target, they did not intend to kill the target. *Id*., at 712. During PCRA proceedings, Mr. Zdrale was found to have been unavailable for defendant's trial because he had, through his attorney, communicated to defendant's counsel that he was asserting his Fifth Amendment privilege against self-incrimination. *Id.*, at 711-12. Thus, the Superior Court concluded that this amounted to new evidence that was unavailable to the defendant at the time of his trial. We would hasten to note that this is different to our own case in that no communication, whatsoever, was made between Mr. Jones' attorneys and [Appellant's] regarding an assertion of Fifth

- 12 -

Amendment privilege. The Superior Court also found that Mr. Zdrale's testimony was neither cumulative, nor was it offered to impeach credibility. *Id*., at 712. It was the final prong of the test for newly discovered evidence, regarding whether the new evidence would likely compel a different verdict, that was in question.

Regarding credibility in *Fiore*, the Superior Court stated the following:

> The PCRA court determined that Mr. Zdrale's testimony was of "questionable credibility." We note that the PCRA court did not find that Mr. Zdrale was incredible, but instead noted Mr. Zdrale's questionable credibility in determining that his testimony would not likely have compelled a different verdict.

780 A.2d, at 712. This is in stark contrast to our own case in which we have stated that [Appellant] and, paramount to this claim, Mr. Jones, with limited exceptions for some mundane facts, are incredible and we have stated our reasons for so finding, *supra*. The *Fiore* court also found that the PCRA court's findings regarding inconsistencies in Mr. Zdrale's testimony did not bear upon the ultimate issues. *Id.*, at 713. Again, this is in contrast to our case in which the testimony of Mr. Jones, regarding ultimate issues, was almost entirely inconsistent with *every other witness*—save one. And the testimony of that one witness, Mr. Hertz is *still*, ultimately, at odds with Mr. Jones' testimony. Mr. Hertz believed that Mr. Jones *and* [Appellant] were in the bathroom, because he could not see them anymore. Mr. Jones' testimony was such that he entered the bathroom *alone*. Mr. Jones' testimony was at odds with all other testimony.

The foregoing in mind, the *Fiore* court stated the following:

> This leads us to the final conclusion of the PCRA court. that Mr. Zdrale's testimony was not likely to have changed the outcome of the trial. The PCRA. court determined his testimony was not so persuasive as to compel a different result. In evaluating Mr. Zdrale's testimony, the PCRA court used the same factors it would have asked the jury to consider. The PCRA [sic] recognized that Mr. Zdrale had a friendship with Appellant and animosity toward other persons in the case, he had numerous inconsistencies and inaccuracies in his testimony and he had suffered a brain injury that

- 13 -

impaired his memory. Even considering this to be true, Mr. Zdrale's testimony that there was no conspiracy, if believed by the jury, would have changed the outcome of this case.

The Commonwealth's case was essentially that Appellant asked Mr. Zdrale to find someone to murder Mr. Duritsa. **The Commonwealth attempted to prove Appellant's involvement through statements made between Mr. Zdrale and Mr. Thomas and Mr. Smith, the men hired to conduct the murder**. Mr. Zdrale's testimony would be essential to the defense to contradict the testimony of Mr. Smith, a convicted perjurer with a criminal background, and Mr. Thomas, a person with an extensive criminal history. **Mr. Thomas admitted to lying to the police about the events in question and gave conflicting versions under oath**. Mr. Thomas also received a sentence of six to twenty-three months for his involvement in these charges in return for his cooperation with the Commonwealth. He also received
immunity from prosecution for any future charges in return for testifying before the grand jury and at Fiore's trial. **Additionally, the testimony of both Mr. Smith and Mr. Thomas was inconsistent with previous statements they had given under oath**.

Mr. Zdrale's testimony contradicts the Commonwealth's case-in-chief. **At trial, the Commonwealth contended that Mr. Zdrale was the middleman in the murder-for-hire conspiracy. He *was the link* between Mr. Fiore, the person who wanted Mr. Duritsa killed, and Mr. Smith and Mr. Thomas, the men hired to kill Duritsa**. Mr. Zdrale professed that there was no conspiracy. We believe that a jury should be presented with the testimony of Mr. Zdrale to permit it to determine whether his version of the events is more credible than that of Mr. Smith and Mr. Thomas.

*Id*., at 713 (internal citations and notes omitted) (emphasis added). Our case, is markedly different from that of *Fiore*.

To begin, unlike in *Fiore*, the Commonwealth witnesses in our case were disinterested parties whose involvement in the case

was happenstance. In *Fiore*, the newly discovered evidence, in the vessel of Mr. Zdrale, was the Commonwealth's alleged middleman. Mr. Zdrale's testimony could potentially rebut that theory and the evidence of the two Commonwealth witnesses who were to have been in on the plot. Our newly discovered evidence witness is, like the one in *Fiore*, a codefendant; however, unlike in *Fiore*, the Commonwealth, in our case, relied upon witnesses who were disinterested.

In addition to the above, the testimony of crucial witnesses in *Fiore*, Messrs. Smith and Thomas, was inconsistent with prior sworn statements. Though Ms. Chambers' trial testimony *added* details to her pretrial statements, she did not, as we discussed, *supra*, under the law, testify inconsistently with her prior statements. Admittedly, Ms. Chambers has a checkered past; however, Mr. Charles' and Trooper Sentak's testimony aligned with Ms. Chambers' testimony that *only one person entered the bathroom*. And Mr. Charles' testimony established that there was no time for anyone else besides the Defendant to have entered the bathroom. As for the critical evidence offered by Ms. Chambers' regarding the timing of her bathroom cleaning, the jury clearly decided this issue in the Commonwealth's favor even in light of Ms. Chambers' past. Unlike in *Fiore*, Mr. Jones' testimony would not be rebutting unsavory witnesses where one was offered deals in exchange for testimony; but, rather, it would be offered against disinterested parties whose testimony agrees in major detail. And Mr. Jones' testimony would be in contradiction of defense witness Mr. Hertz's testimony that *both* codefendants entered the bathroom.

For all of the foregoing reasons, we can differentiate our case from that of *Fiore*. As such, our determination that this claim should fail stands.

---

[6] This Court would never state as a matter of fact that a perjury charge could not be made out; but, it being, in our estimation, an unlikely event, we stand by our assertion that Mr. Jones was free to testify unencumbered.

PCRA Court Order and Opinion in Support of Order, 8/18/21, at 22-35 (italics and boldface for emphasis in original).

Our review of the record supports the PCRA court's conclusion that the four-prong test for granting a new trial on the basis of after-discovered

evidence has not been met. While the PCRA court determined that the fourth prong had not been met, we further find that Mr. Jones' testimony would primarily serve to impeach that of Mr. Charles, Ms. Chambers, and Trooper Kelly, eyewitnesses who had testified that Appellant entered the restroom where the firearm had been abandoned, while Mr. Jones' did not do so. For this reason, we hold that Appellant has failed to establish the third prong of the test as well. **See Murchison**, **supra**.

Notwithstanding, as the PCRA court found, were Appellant to present Mr. Jones' testimony at a new trial, it is not likely to compel a different verdict given the contrary testimony of multiple, credible eyewitnesses who previously testified. Appellant's argument to the contrary, the PCRA court's explanation does not reveal a bias toward him but, rather, evinces a thorough analysis supported by record evidence.

Moreover, Appellant's position that the PCRA court based its decision upon the incorrect assumption that "there is likely no price Mr. Jones could be made to pay for any untrue testimony," **see** Brief for Appellant at 16, is belied by the record. The PCRA court was careful to explain in footnote 6 of its Opinion and Order that it would never definitively state whether a perjury charge could be brought against Jones, but it did consider the unlikelihood of that happening in surmising that Jones was free to testify unencumbered. **See supra**. This was just one of numerous factors the PCRA court detailed in support of its decision to deny Appellant PCRA relief.

Appellant further contends that Jones' testimony "was, in fact, inherently *reliable and credible*" because he could be charged with possession of a firearm. Brief for Appellant at 16 (emphasis in original). Appellant also discusses why he deems the PCRA court erred in failing " to lend any credence to Jones's testimony." *Id*. at 18. In setting forth these arguments, Appellant essentially asks this Court to reweigh the testimony of Appellant and Mr. Jones at the PCRA hearing and make our own credibility determinations to reach a different result. This we cannot do.

"Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone." *Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009). Here, the PCRA court found that Mr. Jones' testimony, and that of Appellant, was not credible for numerous reasons. We decline to usurp the PCRA court's credibility determinations or reweigh the evidence. Because the PCRA court's credibility determinations render Appellant's claim on appeal meritless, we affirm the Order denying Appellant post-conviction collateral relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/5/2022